STATE of Maine

v.

William T. SMITH.

Supreme Judicial Court of Maine.

Feb. 1, 1978.

Charles K. Leadbetter (orally), Stephen L. Diamond, Asst. Attys. Gen., Augusta, for plaintiff.

Ellsworth T. Rundlett, III (orally), Franklin F. Stearns, Jr., Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

The Cumberland County grand jury returned the following indictment:

"The Grand Jury Charges:

On or about the sixth day of May, 1976, in the County of Cumberland, State of Maine, William T. Smith did cause the death of Michael G. Fitzgerald, intending to cause such death or knowing that death would almost certainly result from his conduct."

This indictment is based on 17–A M.R.S.A. § 202(1)(A) as then enacted (Criminal homicide in the 2nd degree).[1] Following an instruction to the jury that 17–A M.R.S.A. § 204(1)(A) (Criminal homicide in the 4th degree)[2] was a lesser included offense under the indictment, the jury determined by its verdict that the defendant was guilty of violating Section 204.

The defendant has appealed, raising two fundamental issues which we quote from his brief:

"I. The Presiding Justice erred in refusing to grant defendant's motion for judgment of acquittal and the verdict is contrary to the weight of the evidence because the State failed to prove the conscious disregard necessary to constitute criminal homicide in the 4th degree beyond a reasonable doubt.

II. The Presiding Justice erred in refusing to grant jury instructions on the offense of criminal homicide in the 5th degree pursuant to 17–A M.R.S.A., Section 205, as requested by Counsel for the appellant because there was sufficient evidence for the jury to conclude that the child's death was the result of negligent homicide rather than reckless homicide."

We deny the appeal.

I

Appellant, with Lucy Fitzgerald, and her two children, Lisa Marie, 3½ years old, and Michael G., 2½ years old, had occupied an apartment on Congress Street in Portland for several months prior to the date of the homicide.

On the afternoon of May 6, 1976, Mrs. Fitzgerald and a friend had gone shopping, leaving the two children with the appellant. Previous to her departure Mrs. Fitzgerald and the appellant had been in a dispute concerning their rather precarious financial position. As a result appellant had become overly tense, had episodes of "shaking," and had caused his employer to be notified that he would not report for work that day.

The jury would have been justified in concluding that while appellant was caring for the two children he became irritated by Michael who was "whining" for his mother. He put the boy in his bedroom but later allowed him to return and was holding him on his lap when the "whining" resumed. At this point the appellant became irritated, picked up the child, and threw him a considerable distance against one of the apartment walls. Subsequently, the child lost consciousness, an ambulance was called, and the child was taken to the Maine Medical Center where he died several days later.

Prior to his death he was observed by a pediatrician and a neurosurgeon. The pediatrician testified that the child's condition demonstrated many of the classic symptoms of "child abuse," as that term is medically recognized. Following death a post-mor-

[1] "1. A person is guilty of a criminal homicide in the 2nd degree if:

A. He causes the death of another intending to cause such death, or knowing that death will almost certainly result from his conduct. . ."

[2] "1. A person is guilty of criminal homicide in the 4th degree if he:

A. Recklessly causes the death of another human being . . . ."

This section was repealed by P.L. 1977, ch. 510, § 41, a new section being enacted which punished one who caused the death of another "recklessly, or with criminal negligence."

tem examination was conducted which revealed a "large curved fracture of the right side of the skull" which "measured about 10 inches in length." Death was attributed to "swelling and internal injury to the brain" caused by a "considerable force being delivered to the skull."

In testifying in his own defense the appellant stated that his intent was to place the child in an adjacent chair but that he had thrown him over the chair and into the wall. He then said that he took the child into the bedroom, placed him on a top bunk from which he later fell some four feet into a toy box. It was at this point that the child became unconscious and the ambulance was called.

When asked to comment on appellant's explanation of the injury, the neurosurgeon, an acknowledged expert, testified "there was no probability" that the fall into the toy box could produce the observed results. The pathologist, likewise acknowledged to be an expert, testified, "with respect to the fall onto the floor I don't think it was [a] big enough fall to have accounted for the injuries sustained."

■ In reviewing a conviction to determine whether the verdict was contrary to the evidence, we must, of course, view that evidence and such inferences as may be reasonably inferred therefrom, in favor of the result reached by the jury. If the result reached by the jury was rational, we have no authority to reverse. *State v. Kelley*, Me., 357 A.2d 890, 894 (1976); *State v. Worrey*, Me., 322 A.2d 73, 77 (1974).

■ To obtain a conviction under 17–A M.R.S.A. § 204(1)(A), the State must prove beyond a reasonable doubt that the person so charged acted *recklessly*, namely, that he did

"consciously disregard a substantial and unjustifiable risk that his conduct will cause such a result."

17–A M.R.S.A. § 10(3)(A). The Maine Criminal Code further amplified the above section with the following definition:

"A risk is substantial and unjustifiable within the meaning of this section if, considering the nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation."

17–A M.R.S.A. § 10(3)(C).[3]

■ In his instructions to the jury the Justice presiding was meticulous in making it clear beyond possibility of argument that whether the jury was concerned with a violation of Section 202 or of Section 204, it must conclude beyond a reasonable doubt that the conduct of the defendant was his "voluntary act." Assuming, as we must, that the jury followed this instruction, it is evident that it rejected the appellant's explanation of the injury as being accidental. On our analysis of the record this result was entirely rational. It would be an unbelievable argument to assert that the conscious act of an adult male in throwing a 30-pound, 2½-year-old child against an apartment wall with sufficient force to fracture the skull and cause extensive and lethal brain damage, was not a "gross deviation from the standard of conduct that a reasonable and prudent person would observe" in disciplining such a child for whining for his absent mother. Such conduct meets the legal definition of recklessness.

## II

■ Was it error not to have instructed the jury that 17–A M.R.S.A. § 205(1)[4] was a lesser included offense under the indictment?

---

**3.** This section was replaced by the enactment of P.L. 1977, ch. 510, § 21.

**4.** "1. A person is guilty of criminal homicide in the 5th degree if, with criminal negligence, he causes the death of another."

This section was repealed by P.L. 1977, ch. 510, § 42. We also note that P.L. 1977, ch. 510, § 40 repealed Section 203 (Criminal homicide in the 3rd degree) and reenacted Section 203 under the caption "Manslaughter," which made it an offense to cause the death of another "recklessly, or with criminal negligence."

The presiding Justice declined to instruct the jury as requested and stated, for the record, that in his opinion Sections 204 and 205 are "mutually exclusive" and "by definition negligence cannot exist as a lesser portion of recklessness." For purposes of analysis we will assume that this point was properly preserved for appellate review.[5]

We further assume, arguendo, under *State v. Leeman*, Me., 291 A.2d 708 (1972), that the elements constituting the crime defined in Section 205(1) are necessarily constituent parts of the elements of the crime as legally defined in Section 204(1)(A). Proceeding on these assumptions (but not conceding the legal accuracy thereof), we must first determine whether the failure to instruct as requested affected any of the appellant's substantial rights. Rule 52(a), M.R.Crim.P. We have held on numerous occasions that an instruction need not be given for lesser included offenses unless the issue has been generated by the facts. *State v. Gagnon*, Me., 379 A.2d 395, 397 (1977). The Maine Criminal Code incorporates this rule by providing:

"The court is not required to instruct the jury concerning a lesser offense, unless on the basis of the evidence there is a rational basis for the jury finding the defendant guilty of such lesser offense."

17–A M.R.S.A. § 13(2).

With this background we now turn to the facts to determine whether the jury could rationally have determined that the death of this child was caused by the criminal negligence of the appellant, as that term is defined in the Code.[6]

As we noted in Part I of this opinion, the jury could only rationally conclude that the cause of this child's death was from the injuries received when he was forcibly thrown against the apartment wall.

Was there a rational basis for a finding that the appellant's conduct fell within the Code definition of criminal negligence? We conceive the facts relevant to this issue to be both of a positive and negative character. For example, in a negative sense, appellant did not tell the medical technician, who was first on the scene, that the child had struck his head on the wall but, rather, attributed the injuries to the fall from the upper bunk into the toy box. Similarly, when he first met the child's mother after the child had been taken to the hospital, he gave her the same explanation. It would thus seem reasonable to conclude that the failure to disclose this conduct indicated an awareness of the inculpatory nature thereof.

On the positive side, the appellant gave the police a statement which was introduced into evidence without objection. A police officer who took the statement quoted appellant as saying:

"Mikey was starting to whine . . . he got upset. So he threw Mikey from his lap across the room a distance of 10, 12 feet. Mikey struck his head on the wall. . . ."

Appellant submitted to an examination by a psychiatrist who testified and expressed his opinion that appellant was conscious and aware of what he was doing when the homicidal act was committed.

Appellant's own testimony described in detail the conduct resulting in this fatal incident. For example, the record discloses the following:

"A Well I sat there for a few minutes thinking about what was happening, not really paying attention to the T.V. I was getting to the point that

---

**5.** Prior to the jury instructions counsel for the appellant requested an instruction under Section 205, which was refused. However, after the instructions had been completed counsel did not object before the jury retired to the charge as actually given. Rule 30(b), M.R. Crim.P.

**6.** " 'Criminal negligence.'

A. A person acts with criminal negligence with respect to a result of his conduct when he *fails to be aware* of a substantial and unjustifiable risk that his conduct will cause such a result." 17–A M.R.S.A. § 10(4)(A). (Emphasis supplied.)

I was starting to shake, and at that time I took Michael Fitzgerald from my laps and I went; I thought I went to take him and put him in a straight chair, which is roughly three to five feet away from me, but at the time I threw him and he went over the chair and landed toward the wall and the cedar chest and then hit the floor.

.   .   .   .   .

Q Now, just exactly how did you throw him against the wall, when you threw him against the wall?

A When I took Michael Fitzgerald from my lap, I was in a sit-up, bent over position of the chair which I was sitting in, and Michael Fitzgerald, from just under the arms. I had him by the upper part of his body. I did not have ahold of his arms, I had the underneath part.

.   .   .   .   .

Q And towards what part of the wall did you throw him?

A I took Michael Fitzgerald against the outside walls, outside wall of the house.

.   .   .   .   .

Q Could you describe in detail please, how his body did hit the wall, referring to the wall, if necessary, as the portion of the wall behind the boxes?

A I cannot say for sure as to how his head hit that section of the wall. I know approximately where he entered the wall and the cedar chest, and I believe he hit both sections at the same time."

Our study of the testimonial record leads to the conclusion that the jury would be guilty of gross speculation if it should reach the conclusion that the appellant had "fail[ed] to be aware" that throwing the child forcibly against the wall posed "a substantial and unjustifiable risk" that such conduct could result in fatal injury. Such being the case, it was not error to refuse to give the requested instruction.

The entry is:

Appeal denied.

Judgment affirmed.

DELAHANTY, J., sat at oral argument and conference but did not participate further in this opinion.