**STATE of Maine**

v.

**Scott B. SNOW.**

Supreme Judicial Court of Maine.

April 5, 1978.

Charles K. Leadbetter (orally), William R. Stokes, Stephen L. Diamond, Asst. Attys. Gen., Augusta, for plaintiff.

Clifford & Clifford by Robert W. Clifford (orally), William H. Clifford, Jr., Lewiston, for defendant.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

Following jury trial in Superior Court in Androscoggin County, the Defendant was found guilty of homicide in the first degree.[1] He brings this appeal from the judgment of conviction entered on the jury verdict, assigning as errors the refusal of the presiding justice to give his requested jury instructions on the meaning of "committed for pecuniary benefit," and the refusal of that justice to give requested instructions on third and fourth degree homicide.

We deny the appeal.

From the evidence before it, the jury was warranted in finding the following:

On the afternoon of November 5, 1976, the Defendant first met Robert "Shorty" McBride at a Lewiston second-hand store. The Defendant was trying to sell some stereo speakers when McBride approached in an intoxicated state and requested a ride so he could cash a check. Although the "request" was originally addressed to the store owner, the Defendant eventually agreed to drive McBride in exchange for $5.00.

The two drove to the Lewiston fairgrounds, where McBride lived in the tackroom of one of the barns, to pick up the check, and from there they proceeded to a store in Greene where McBride cashed a Social Security check in the amount of $106.00. The Defendant drove McBride back to Lewiston and dropped him off in the downtown area.

At about 2:00 A.M. that night, the Defendant was returning to Lewiston from Monmouth with one Farrington in the latter's vehicle, when the Defendant told Farrington to drive onto the Lewiston fairgrounds; he directed Farrington to stop in front of one of the barns. The Defendant

---

1. 17–A M.R.S.A. § 201 (1976 Supp.), repealed by P.L.1977, c. 510, § 38, eff. October 24, 1977, read in pertinent part as follows:

   1. A person is guilty of criminal homicide in the first degree if he commits criminal homicide in the 2nd degree as defined in section 202 and, at the time of his actions, one or more of the circumstances enumerated in subsection 2 was in fact present.

2. The circumstances referred to in subsection 1 are:

   .    .    .    .    .

   E. The criminal homicide was committed for pecuniary benefit.

   .    .    .    .    .

3. An indictment for criminal homicide in the first degree must allege one or more of the circumstances enumerated in subsection 2.

told Farrington "he was going to go inside the barn and take some old guy's money," and he then went into the barn.

Several minutes later, the Defendant emerged and asked Farrington for a tire iron because "there was some drunk old man in there he wanted to hit and take his money." After Farrington stated that he had no tire iron, the Defendant reentered the barn, emerging again several minutes later. At that time, the Defendant told Farrington that he had hit "the guy" with a "slimy old club," that he had taken his money, and that he thought he had killed him. The Defendant gave Farrington $10.00 of the money he had taken.[2] A piece of heavy timber with bloodstains was recovered near McBride's body.

Approximately $70.00 was taken from the victim. The blow or blows which caused death were inflicted while the victim was lying face down, intoxicated and possibly unconscious.

## I.

The Defendant requested an instruction on the definition of "committed for pecuniary benefit" which was refused by the presiding justice.[3] That instruction would have directed the jury's attention to whether the pecuniary benefit flowed directly from the death itself, as in the examples in the proposed instruction of a hired killer or one who kills for insurance proceeds. Instead, the presiding justice instructed the jury as follows:

. . . Now, what is pecuniary benefit? In plain, ordinary language, it would be to get money for the defendant, to derive money for himself.

Now, in order to find the defendant guilty of homicide 1, in this area you must find that at the time the defendant entered the stable, if in fact you find that he did, and at the time that he did any act as it pertained to Robert McBride and the injury that was caused to Mr. McBride, if in fact you find that it was done by this defendant, that his intention at that point was to kill him, to cause his death, or to do an act that he almost certainly knew would cause his death in order to gain the money that Mr. McBride had in his pocket.

In other words, it is not a question that he may have decided to cause his death after he had the money, after he had stolen the money, or he had gone in there without any intention of doing any harm to Mr. McBride but he thought the money was on a shelf some place and he was just going to steal the money and that after he had stolen the money, in the course of what happened, he then decided that in order to protect himself he would have to do something, do an act that would cause the death of Mr. McBride. Whatever he did by way of doing the act, if in fact he did it,—and that is for the jury to determine—it must be that he intended to pursue his end of pecuniary gain by causing the death of Robert McBride

. . . . .

The correctness of that instruction is in issue here.

To establish homicide in the first degree the State was required to prove each of the essential elements of homicide in the second degree plus one or more of the "circumstances" set forth in 17-A M.R.S.A. § 201(2) (1976 Supp.).

2. Farrington testified under a grant of immunity given pursuant to 15 M.R.S.A. § 1314–A.

3. The requested instruction, in pertinent part, read as follows:

. . . The circumstance which the state must prove beyond a reasonable doubt in this instance, in addition to proving all the elements of an intentional or knowing homicide, is that the homicide was committed for pecuniary benefit. This means that the killing itself was carried out for economic gain and the economic benefit flowed directly from the death itself. In

other words, the victim must die for the economic gain to be realized.

This would cover a situation where someone kills for money either because he has been or will be paid by someone to kill the victim, or because he wants to collect on an insurance policy.

Other economic benefits which may be gained from the circumstances surrounding a homicide would not be pecuniary benefit within the meaning of this law.

■ Although the Defendant attempts to demonstrate a contrary legislative intent, we hold that a "criminal homicide . . . committed for pecuniary benefit" includes a homicide committed during a robbery, provided there is a concurrence of the mental state required for second degree homicide, death producing conduct sufficient to constitute legal cause, and the specific intent to obtain money thereby.[4]

■ We are guided by the fundamental rule of statutory construction that words must be given their common meaning unless the statute discloses a contrary intent; such intent, if any, is determined by giving statutory language the construction which men of common intelligence would readily ascribe thereto. *Union Mutual Life Insurance Company v. Emerson,* Me., 345 A.2d 504, 507 (1975). "Pecuniary" plainly means "of or relating to money," and "benefit" plainly means "gain" or "advantage."

A homicide in the second degree which is committed "for" monetary gain therefore requires a showing of specific intent to obtain money by and in conjunction with the conduct and mental state necessary for second degree homicide. This temporal concurrence of mental culpability with conduct producing a prohibited result is a basic premise of Anglo-American criminal law. LaFave & Scott, *Criminal Law* (1972), § 34. While we require concurrence of those elements, we think it subverts the plain meaning of the words to require, as the Defendant would have us do, that death be some kind of a legal condition precedent to obtaining the pecuniary benefit. The construction we reach has been the view of a majority of courts which have construed similar language. *Neal v. State,* 259 Ark. 27, 531 S.W.2d 17 (1975), vacated and remanded on other grounds 429 U.S. 808, 97 S.Ct. 44, 50 L.Ed.2d 69 (1976), aff'd on remand 548 S.W.2d 135 (1977); *Young v. State,* 237 Ga. 852, 230 S.E.2d 287 (1976);

*Meeks v. State,* 339 So.2d 186 (Fla.1976); but see *State v. Rust,* 197 Neb. 528, 250 N.W.2d 867 (1977). The force of the *Rust* decision is vitiated by a difference in the statutory language between the Nebraska statute[5] and 17-A M.R.S.A. § 201, and by the fact that the Nebraska court discerned a legislative intent not to have the different aggravating circumstances in their statute overlap. On the other hand, our statute provides that "one or more" of the circumstances enumerated in § 201(2) may be present in a given situation.

Since we have determined that the words "committed for pecuniary benefit" are unambiguous, we have no occasion to go beyond the words employed to seek legislative intent by tracing the language in question from the Model Penal Code[6] to the Maine Criminal Code. *Chase v. Edgar,* Me., 259 A.2d 30, 32 (1969).

■ In so holding, we emphasize that we do not adopt the State's suggestion that it is sufficient to show that the homicide was "motivated" by the thought of pecuniary benefit. Penal statutes must be strictly construed. *Duncan v. State,* 158 Me. 265, 183 A.2d 209 (1962). Motive has been defined as a secondary or ulterior intention, to be distinguished from immediate intention, which the criminal law calls intent. Lafave & Scott, *supra.,* § 29. The "circumstances" which must be proven to raise second degree homicide to first degree homicide must be deemed an essential element of that offense. Motive, on the other hand, is not an element of a substantive criminal offense. *State v. Merry,* 136 Me. 243, 248, 8 A.2d 143, 146–147 (1939). We glean nothing from the language of § 201 that would indicate the Legislature's intention to depart from that traditional rule.

■ Judged by this standard, the instruction given by the presiding justice was correct. The jury was told that pecuniary benefit ". . . would be to get money

---

4. The evidence in this case does not require us to consider whether, or to what extent, a second degree homicide committed to obtain something other than money is "committed for pecuniary benefit."

5. Neb.R.R.S.1943, section 29–2523.

6. See Model Penal Code, § 201.6(3) (Tent.Dr. No. 9, 1959).

for the Defendant, to derive money for himself." The jury was also told that the act that produced death must have been done with an intention to cause the victim's death or with knowledge that it would almost certainly cause death

> "in order to gain the money that Mr. McBride had in his pocket . . . . Whatever he did by way of doing the act, if in fact he did it,—and that is for the jury to determine—it must be that he intended to pursue his end of pecuniary gain by causing the death of Robert McBride . . . ."

This instruction adequately informed the jury of the higher degree of culpability, beyond that required for second degree homicide, that was necessary to convict the Defendant of criminal homicide in the first degree.

This assignment of error provides no basis for reversal of the judgment below.

## II.

The Defendant next argues that it was error for the presiding justice to refuse to instruct the jury on criminal homicide in the third degree. The essence of this argument is that, on the facts of this case, third degree homicide is a lesser included offense within first degree homicide. However, this argument misconstrues the nature of lesser included offenses as defined in our leading case, *State v. Leeman*, Me., 291 A.2d 709 (1972).

*Leeman* held that to be a lesser included offense, the lesser, as legally defined, must necessarily be a constituent part of the greater, as legally defined.

> "To be necessarily included in the greater offense, the lesser must be such that it is impossible to commit the greater without having committed the lesser." *Id.* at 711.

Thus, our test looks not to the facts of a particular case, as the Defendant would have us do, but rather to the legal definitions of the two offenses in question.

■ One who intentionally kills another in order to obtain insurance proceeds on the victim, for example, has committed criminal homicide for pecuniary benefit, as the Defendant himself acknowledges, but he has not *necessarily* caused the death "in the commission of, or an attempt to commit, or immediate flight after committing, or attempting to commit any Class A crime, . . . (where) . . . such death is a natural and probable consequence of such commission, attempt or flight." 17–A M.R. S.A. § 203 (1976 Supp.). The perpetrator has not *necessarily* committed an underlying Class A crime, and the manner in which the perpetrator caused death is not *necessarily* a natural and probable consequence of the commission of, the attempt to commit, or flight from a Class A crime. Thus, under the principles announced in *State v. Leeman, supra*, homicide in the third degree is not a lesser included offense within homicide in the first degree; and it was not error by the presiding justice to refuse to instruct the jury on third degree homicide.

The second assignment of error provides no basis for reversal of the judgment below.

## III.

The Defendant's final assignment of error is that the presiding justice should have given a requested instruction on homicide in the fourth degree. His position is that fourth degree homicide is essentially a restatement of common law manslaughter; and that, notwithstanding *State v. Leeman, supra.*, policy reasons dictate that an instruction on fourth degree homicide should have been included. See *State v. Northup*, Me., 318 A.2d 489, 496–498 (1974).

■ We do not reach the issue of whether, and under what circumstances, a defendant charged with first or second degree homicide is entitled to an instruction on fourth degree homicide. Even if such an instruction were available generally, it was not error to refuse to give that instruction here, because on the basis of the evidence, there would have been no rational basis for the jury finding mere recklessness. 17–A M.R.S.A. § 13(2); cf. *State v. Rice*, Me., 379 A.2d 140 (1977).

If the jury believed the evidence that it was this Defendant who entered the barn, it could not rationally have found mere recklessness on the evidence before it. First, the evidence showed that the Defendant entered the barn intent on taking the money he knew McBride possessed. Secondly, the evidence relating to the manner and means by which the killing was carried out simply would not support a finding that the Defendant acted with recklessness, as that term is defined in 17–A M.R.S.A. § 10(3). Cf. *State v. Smith*, Me., 382 A.2d 40, 42–44 (1978).

The line between reckless conduct, on the one hand, and knowing or intentional conduct on the other hand, is often a difficult one. What we decide here on the facts of this case would not necessarily apply to the facts of other cases.

The third assignment of error, likewise, provides no basis for reversal of the judgment below.

The entry will be:

Appeal denied.

Judgment affirmed.

WERNICK and DELAHANTY, JJ., did not sit.