**STATE of Maine**

v.

**Robert CAOUETTE, Jr.**

Supreme Judicial Court of Maine.

Argued June 15, 1983.

Decided July 18, 1983.

Anita M. St. Onge (orally), Charles K. Leadbetter, Fernand R. Larochelle, Asst. Attys. Gen., Augusta, for plaintiff.

Burke & Gauvreau, E. James Burke (orally), Lewiston, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, and WATHEN, JJ.

McKUSICK, Chief Justice.

After a jury trial in Superior Court (Kennebec County), Robert Caouette, Jr., was convicted of the intentional or depraved indifference murder of Alfred Pelletier. 17–A M.R.S.A. § 201 (1983). On appeal, Caouette contends that (1) the presiding justice erred by refusing to instruct the jury on the elements of felony murder, as a lesser included offense of the section 201 murder with which he was charged; (2) the justice should not have given an instruction on accomplice liability; (3) the justice improperly admitted the former testimony given by a police officer at defendant's bail hearing; and (4) there was insufficient evidence before the jury to sustain a conviction of murder.

Finding no merit in any of defendant's appellate contentions, we affirm his conviction.

### I. *Felony Murder Instruction*

■ Defense counsel requested the presiding justice to instruct the jury on the elements of felony murder, 17–A M.R.S.A. § 202 (1983), as a lesser included offense of murder, section 201.[1] The justice refused

to do so and defendant complains that the refusal was error.[2]

Defendant argues that since murder is one of the crimes specified as an underlying felony in section 202, felony murder is necessarily committed by any one who commits murder as defined by section 201. Essentially, defendant asks this court to overrule *State v. Anderson,* 409 A.2d 1290 (Me.1979), which held that felony murder is *not* a lesser included offense of murder because a person guilty of murder need not necessarily have committed an underlying felony required for felony murder. Defendant reasons that *Anderson* relied on *State v. Snow,* 383 A.2d 1385 (Me.1978), and the wording of the felony murder statute applicable in *Snow* differs in a significant way from the wording of the statute applicable in *Anderson* and the instant case. The felony murder statute applicable in *Snow* read in pertinent part:

A person is guilty of criminal homicide in the 3rd degree if, acting alone or with one or more other persons in the commission of, or an attempt to commit, or immediate flight after committing, or at-

---

1. 17–A M.R.S.A. § 201 reads in pertinent part:
 1. A person is guilty of murder if:
 A. He intentionally or knowingly causes the death of another human being; [or]
 B. He engages in conduct which manifests a depraved indifference to the value of human life and which in fact causes the death of another human being;

 \* \* \* \* \* \*

 The relevant portion of 17–A M.R.S.A. § 202 reads:
 A person is guilty of felony murder if acting alone or with one or more other persons in the commission of, or an attempt to commit, or immediate flight after committing or attempting to commit murder, robbery, burglary, kidnapping, arson, rape, gross sexual misconduct, or escape, he or another participant in fact causes the death of a human being, and such death is a reasonably foreseeable consequence of such commission, attempt or flight.
 17–A M.R.S.A. § 13–A (1983), which governs instructions relative to lesser included offenses, states in relevant part:
 2. For purposes of this section, a lesser included offense is an offense carrying a lesser penalty which:

 A. As legally defined, *must necessarily be committed when the offense or alternative thereof actually charged, as legally defined, is committed.* If the lesser offense is defined in a manner that it may be committed in alternative ways, each alternative which meets the above definition shall be deemed to be a lesser included offense. Facts which are a basis for sentencing classification of either the crime charged or the lesser crime shall be considered alternatives of those crimes;
 B. Meets the requirements of paragraph A, except that a culpable state of mind is required which is different than that charged but which results in lesser criminal liability; or
 C. Is by statute expressly declared to be charged when the greater offense is charged. (Emphasis added)

2. Section 202 felony murder is a Class A offense, carrying a maximum penalty of 20 years imprisonment. 17–A M.R.S.A. § 202(3); § 1252(2)(A) (1983). Section 201 murder carries a minimum sentence of 25 years imprisonment. 17–A M.R.S.A. § 1251 (1983).

tempting to commit *any Class A crime,* or escape he or another participant causes the death of a person and such death is a natural and probable consequence of such commission, attempt or flight.

17–A M.R.S.A. § 203(1) (Pamph.1976) (emphasis added), *repealed* by P.L.1977, ch. 510, § 40. Murder being at that time as now an unclassified crime rather than a Class A crime, it could not provide the basis for a felony murder conviction under former section 203. 17–A M.R.S.A. §§ 201, 202 (Pamph.1976), *repealed* by P.L.1977, ch. 510, §§ 38 and 39, respectively.

We decline to distort the clear meaning of section 202 in the manner urged by defendant. Section 202 does not contemplate that the underlying felony will be the murder of the very person for whose murder the defendant is charged. Such an interpretation would fly in the face of reason. Felony murder by its very nature involves an *unintended* death that results as a reasonably foreseeable consequence of an *intended* felony. 2 C. Torcia, *Wharton's Criminal Law* § 145, at 204 (14th ed. 1979). Thus, under section 202, felony murder is committed if in the process of murdering one person an individual causes the death of a second person (and "such death is a natural and probable consequence" of the first murder). Notwithstanding the amendment of the felony murder statute to add murder as itself one of the possible underlying felonies, defendant's argument must fail.[3]

II. *Accomplice Liability Instruction*

A single count of the same indictment charged both defendant Caouette and one Tyson Palardy with the murder of Pelletier. Before either defendant went to trial, Palardy pleaded guilty to a lesser offense. The jury trying Caouette heard evidence that suggested Palardy's involvement in the killing. The presiding justice instructed the jury that it might find Caouette guilty *either* as the person who himself committed

the acts that constituted murder *or* as an accomplice; defendant's complicity as an accomplice might arise either from his intentional aiding of another person in committing the murder, or from his participation in a robbery when the murder was a reasonably foreseeable consequence of his conduct. *See* 17–A M.R.S.A. § 57(3) (1983).

Defense counsel on appeal argues that the trial jury did not have before it sufficient evidence of Palardy's culpability for murder to generate an issue of Caouette's accomplice liability for a murder committed by Palardy. He claims that the evidence of Palardy's involvement does not go beyond his possible presence at the time and place of the murder and his later participation in cleaning up the murder site. Defense counsel contends that such evidence would not support a jury verdict finding Palardy guilty of murder.

■ Even if we assume *arguendo* that the State did not present enough evidence to get to the jury on a murder charge against Palardy, that fact does not make the accomplice liability instruction erroneous. Proof of guilt of Palardy as the principal actor in the murder of Pelletier is not a prerequisite to convicting Caouette as an accomplice.

Subsection (6) of 17–A M.R.S.A. § 57, which defines criminal liability for the conduct of another, expressly provides that an "accomplice may be convicted on proof of the commission of the crime and of his complicity therein . . . ." The nature of the defendant's "complicity" that will make him legally accountable for the conduct of another person is specified in subsection (3) of that same section 57, and does *not* include proof of the guilt of another person.

■ The New Hampshire Supreme Court has said the following about the identical provision of New Hampshire Criminal Code

---

**3.** Defendant also argues that the evidence at trial was sufficient to convict him of robbery and that therefore robbery could serve as the underlying offense under section 202. This issue was settled in *State v. Anderson,* 409 A.2d

1290, 1304 (Me.1979). Proof of murder as legally defined will not necessarily prove the underlying felony of robbery. *See* 17–A M.R.S.A. § 13–A.

(§ 626.8) from which Maine derived its section 57(6), *see* Comment—1975 to 17–A M.R.S.A. § 57:

> [W]e interpret the statute's language to exclude the guilt of the named principal as an element necessary for the conviction of an accomplice.

*State v. Jansen,* 120 N.H. 616, 618, 419 A.2d 1108, 1110 (1980). And further:

> The conviction of an accomplice is thus premised upon proof of the commission of the criminal act, rather than on the guilt of the principal.

*Id.* That construction of another state's accomplice statute, which served as the verbatim model for our Maine statute, is powerful precedent in the case at bar. *Cf. State v. Wedge,* 322 A.2d 328 (Me.1974) (heavy weight given to federal decisions in construing Maine Rules of Criminal Procedure modeled on federal criminal rules).

■ The accomplice liability instruction should not be given as a matter of course in every criminal case; it is proper only if the evidence generates an accomplice issue. *See State v. Tibbetts,* 379 A.2d 735, 737 (Me.1977). The nature and quantum of evidence that will generate that issue may best be defined in light of the purpose that is served by giving the instruction. In a case such as the one at bar, unless the jurors are given the charge on accomplice liability, they may erroneously conclude that the presence or other involvement of a second person raises a reasonable doubt as to whether the defendant on trial performed the acts constituting the crime. The jurors must in that circumstance be informed of the law that it makes no difference to the defendant's criminal liability whether he himself performed those criminal acts or merely intentionally aided another in committing them.

■ Thus, to generate the accomplice liability issue, the evidence of the involvement of a second person need only raise the possibility that a member of the jury will entertain a reasonable doubt as to whether the defendant committed the crime alone. The evidence of Palardy's involvement, even if inadequate to prove his guilt of the murder of Pelletier, was plainly such as to require the accomplice instruction. Only then would the jury decide upon defendant Caouette's guilt or innocence with an accurate view of the applicable law of criminal liability.

### III. *Former Testimony of Unavailable Witness*

■ On May 6–8, 1981, a Superior Court justice conducted an extensive hearing to determine whether defendant Caouette, then indicted for the murder of Pelletier, would be released on bail. The State sought to bar his release on bail as a matter of right, by showing that "the proof [of his guilt of murder was] evident or the presumption great." *See* Me. Const. art. I, § 10; *Fredette v. State,* 428 A.2d 395 (Me. 1981). Near the end of the bail hearing, the State presented the testimony of Marc Anton, a Maine State Police trooper, who had performed analyses on various blood samples. Anton died before Caouette's trial started on September 28, 1982.

That former testimony given at the bail hearing by Trooper Anton was admissible as an exception to the hearsay rule if, and only if, defendant Caouette at that hearing had had an opportunity and similar motive to develop the testimony by cross-examination. M.R.Evid. 804(b)(1); [4] Field and Murray, *Maine Evidence* § 804.2, at 237 (1976). The "opportunity and similar motive" issue must be resolved by the justice presiding at trial as a fact determination essential to his

---

4. Rule 804(b)(1) provides:

**Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

preliminary ruling on admissibility. *See* M.R.Evid. 104(a). There is no *per se* rule either that makes testimony at a bail hearing automatically admissible upon merely a showing that the witness has died, or that automatically bars all such testimony. *See State v. Smith,* 415 A.2d 570, 572–73 (Me. 1980); *State v. Rich,* 395 A.2d 1123, 1128–29 (Me.1978).

In ruling that Trooper Anton's testimony at Caouette's bail hearing was admissible at his later trial, the presiding justice must be taken to have made the findings of fact necessary to satisfy the Rule 804(b)(1) hearsay exception—namely, that (1) Anton had become unavailable (a fact that Anton's death makes undisputable), and (2) Caouette had at the bail hearing a "similar motive" and a meaningful "opportunity" to develop the subject of Anton's testimony. *See State v. Hafford,* 410 A.2d 219, 220 (Me.1980). "Unless those findings were clearly erroneous, it was within the discretion of the court to admit the [former testimony] in evidence." *Id.*

Under all the circumstances surrounding Anton's testifying at the bail hearing, we can find no clear error in the trial justice's implicit findings of fact. The defense had a full opportunity to cross-examine the trooper and in fact took advantage of that opportunity to establish that no blood had been found in the van that defendant, according to the theory of the State's case, had used to transport the victim's body. The bail hearing was held to determine whether Caouette might be free from incarceration for the time up to the return of a verdict, a period that turned out to be seventeen months in length. The presiding justice could properly have concluded that Caouette's motive for avoiding imprisonment for that extended period (the very time when he might well like to be free to work with his attorney in preparing his defense) was similar to his motive for avoiding imprisonment following conviction.

Defendant fails to show that the presiding justice committed any reversible error in admitting the former testimony of Trooper Anton.

IV. *Sufficiency of the Evidence*

 A careful review of the record at trial reveals that there is no merit in defendant's contention that the trial evidence did not legally justify the jury's guilty verdict.

A large number of items of circumstantial evidence point to Caouette's participation in the brutal killing of Pelletier in the third floor premises at 124 Lisbon Street in Lewiston on Friday, March 13, 1981. The Law Court must view the record below in the light most favorable to the State, *see State v. Boyer,* 392 A.2d 41, 42 (Me.1978), and must defer to the jury's decisions as to the credibility and weight of the various items of testimony and other evidence. *See State v. Fournier,* 267 A.2d 638, 641 (Me. 1970). The Law Court can vacate a guilty verdict only if the jury could not rationally have reached that conclusion on the basis of the evidence before it. *See State v. Ruprecht,* 458 A.2d 418, 419 (Me.1983). The standard for reviewing a criminal jury's verdict is the same whether the evidence in the case is circumstantial or direct. *See State v. LeClair,* 425 A.2d 182, 184 (Me. 1981).

 Applying those standards to the present record on appeal, we cannot say that the jury acted irrationally in concluding beyond a reasonable doubt that defendant was guilty, as either a principal or an accomplice, of the murder with which he was charged.

The entry is:

Judgment affirmed.

All concurring.