1997 ME 60

**STATE of Maine**

v.

**Dale CUNNINGHAM.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 16, 1997.

Decided April 2, 1997.

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Atty., Bangor, for State.

Julio V. DeSanctis, Downeast Law Offices, P.A., Orrington, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Dale Cunningham appeals from judgments entered in the Superior Court (Penobscot, *Kravchuk, J.*) following jury verdicts finding him guilty of operating a motor vehicle after the revocation of his license as a habitual offender (Class C) in violation of 29–A M.R.S.A. § 2557 (1996)[1] and operating a motor vehicle under the influence of alcohol (Class D) in violation of 29–A M.R.S.A. 2411 (1996).[2] On appeal, Cunningham argues that the court erred in admitting certain opinion testimony of the arresting officer and challenges the sufficiency of the evidence to support the verdicts. Although we agree with Cunningham that the court erred in admitting the opinion evidence of the arresting officer, we conclude that the error is harmless. We disagree with Cunningham's additional contention that the evidence is insufficient to support the verdict. Accordingly, we affirm the judgments.

[¶ 2] Officer Randy Dellaire of the Dexter Police department was on patrol with another officer[3] on October 1, 1995. At approximately 12:15 a.m., a vehicle approached from the opposite direction with its lights on high beam. When the vehicle passed without dimming its headlights, Dellaire decided to stop the vehicle and turned around to do so. After turning his cruiser around, Dellaire observed the vehicle turning left into the parking lot of a gas station. Dellaire testified that something obstructed his view for one to two seconds. When the officer arrived in the lot, he saw the car about sixty to seventy feet in front of him, and one individ-

1. 29–A M.R.S.A. § 2557 (1996) provides in part:
   **§ 2557. Operating after habitual offender revocation**
   **1. Crime.** A person commits a crime as defined in subsection 2 if that person operates a motor vehicle on a public way, as defined in Title 17–A, section 505, subsection 2, when that person's license to operate a motor vehicle has been revoked under this subchapter and that person:
   **A.** Has received written notice of the revocation from the Secretary of State;
   **B.** Has been orally informed of the revocation by a law enforcement officer;
   **C.** Has actual knowledge of the revocation or
   **D.** Is a person to whom written notice was sent in accordance with section 2482 or former Title 29, section 2241, subsection 4.
   **2. Offense; penalty.** Violation of this section is:

   . . . . .

   **B.** A Class C crime if:

   **(1)** The person has one or more convictions for operating after revocation under this section or under former Title 29, section 2298 within the previous 5 years....

2. 29–A M.R.S.A. § 2411 (1996) provides in part:

   **§ 2411. Criminal OUI**
   **1. Offense.** A person commits OUI, which is a class D crime unless otherwise provided, if that person operates a motor vehicle:
   **A.** While under the influence of intoxicants; or
   **B.** While having a blood-alcohol level of 0.08% or more.

3. The second officer did not testify at trial.

ual was standing beside the driver's side door with the door open. As Dellaire approached the individual, he appeared unsteady on his feet. The individual pointed behind the gas station and told Dellaire to "go get the driver." The man, who was later identified as Cunningham, told the officer that another man named Jackson had run behind the building, but the officers were unable to find anyone after briefly searching. Dellaire, believing Cunningham to be the operator of the car and observing his slurred speech, had Cunningham perform field sobriety tests. Cunningham subsequently was placed under arrest and charged with operating after habitual offender revocation and OUI.

[¶ 3] Before trial, Cunningham moved *in limine* to exclude any opinion from Dellaire as to whether Cunningham could have gotten from the passenger side of the car to outside the driver's side in the time that the vehicle was out of the officer's sight. The court concluded that testimony as to whether Dellaire believed that Cunningham was the operator of the vehicle would be improper but that the officer could give a lay opinion as to his observations and what could be done in a certain amount of time. At trial, Dellaire testified that "it just is impossible for somebody to—to exit the vehicle, close the door, run around the front of the vehicle and back to the driver's side and start walking back the other way in just a couple seconds." In a non-responsive answer, Dellaire also said that it was plausible to him that Cunningham was operating the vehicle. The court struck this answer, however, Cunningham did not request the court to give a limiting instruction to the jury. Cunningham testified and denied that he was the operator of the vehicle.[4] The jury subsequently found Cunningham guilty of both charges.

## I.

[¶ 4] Cunningham contends that the court abused its discretion in admitting

the officer's opinion as to whether Cunningham could have gotten out of the passenger side and moved to the opposite side of the car in the span of time that the officer's view was obstructed. Cunningham argues that the officer's opinion invaded the province of the jury. We review questions of opinion testimony for an abuse of discretion. *Stanley v. DeCesere*, 540 A.2d 767, 770 (Me.1988); *Pierce v. State*, 463 A.2d 756, 760 (Me.1983).

M.R.Evid. 701 provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

An opinion is only admissible if it is based on the witness's perception and is helpful to the jury. Opinion evidence deemed helpful "has traditionally been admitted out of necessity as 'short-hand rendering of the facts.' Speed, identity, age, size, quantity, etc., under appropriate circumstances fall within this rule." *State v. Bowen*, 366 A.2d 174, 177 (Me.1976). These opinions are frequently admitted "because there is no way to convey to the jury what the witness observed except in the form of an opinion." Field & Murray, *Maine Evidence* § 701.1 at 7–2 (1992). "It may be necessary to allow such evidence in order not to risk its loss." *State v. Gray*, 731 S.W.2d 275, 285 (Mo.Ct.App.1987). Thus, we have allowed the admission of opinion evidence relating to the speed of a car, a person's appearance, or what a defendant appeared to be doing under certain circumstances. *See State v. Berube*, 669 A.2d 170, 172 (Me.1995) (court permitted three eye witnesses to testify as to speed of motorcycle when they viewed it from stationary vantage points in relation to car following it, all had previously viewed speeding motorcycles, and

4. Cunningham testified that he spent the evening with Richard Jackson and Jackson's family at their home, and Jackson was driving the vehicle. Cunningham said that Jackson had been in a fight earlier that day with Jackson's brother, police officers had broken it up, and Jackson and Cunningham thought that when the cruiser be-

gan to follow them, it might have been the brother. Cunningham testified that Jackson pulled into the parking lot, got out of the car, and ran. Cunningham initially was going to run but then stayed because he did not feel that he had done anything wrong. Cunningham readily admitted at the trial that he was intoxicated.

each had familiarity with motorcycles); *State v. Lagasse,* 410 A.2d 537, 543–44 (Me.1980) (testimony that young woman's face looked like it had been slapped); *State v. Pottle,* 384 A.2d 55, 56 (Me.1978) (testimony that witness saw defendant carrying what looked like a gun). Admission of lay opinion testimony may be proper because, in some situations, the only way that the witness can describe to the jury what factually happened is to give an opinion.

[¶ 5] In this instance, the opinion went beyond the ambit of the rule and was unhelpful to the jury. A lay opinion is inadmissible when *"by the mere words and gestures of the witness the data he has observed can be so reproduced that the jurors have those data as fully and exactly as the witness had them at the time he formed his opinion."* VII John Henry Wigmore, *Wigmore on Evidence* § 1924 at 32 (1978 Chadbourne Rev.).[5] We have said that "ordinarily a lay witness cannot, under the guise of an opinion, give his deductive conclusion from what he saw and found on visiting the scene of an accident after the accident has happened." *Emery Waterhouse Co. v. Lea,* 467 A.2d 986, 992 (Me.1983).

[¶ 6] Here, Dellaire was unable to testify based on his own knowledge that Cunningham was the operator of the car because the officer never actually saw the driver. The evidentiary rules allowed Dellaire to testify as to the approximate speed of the vehicle, the time span in which his view was obstructed, and what he observed after the car came back into view. The testimony as to whether Cunningham could have gotten out of one side of the car and traveled to the other in the time span specified, however, was not

helpful to the jury. On this point, Dellaire's testimony indeed was superfluous and did not aid the jury in any way. The jury could have made the same determination as Dellaire did based on the exact same facts as those on which the officer relied. The opinion added nothing to the purely factual evidence already presented by Dellaire, who drew that inference for the jury.

■ [¶ 7] We conclude, however, that the admission of the evidence was harmless in the circumstances of this case. An error is harmless if "it is highly probable that the error did not affect the jury's verdict," *State v. Phillipo,* 623 A.2d 1265, 1268 (Me.1993); *State v. True,* 438 A.2d 460, 467 (Me.1981). The critical issue for the jury was whether the officer was correct in his testimony about losing sight of the defendant for only about two seconds. In his own testimony, the defendant agreed that he could not possibly have done what he said he had done within two seconds:

Q. That police cruiser was right behind you; is that a fair statement?

A. When I piled out—when I knew it was behind me?

Q. As you were pulling—as you and Jackson are pulling into this parking lot and stopping, that police cruiser is coming in virtually right behind you?

A. No.

Q. A couple of seconds?

A. Because I didn't know—couldn't have been that long because, as drunk as I was, I couldn't have got out of the car in two seconds.

5. Wigmore stated that "[i]t is not that there is any fault to find with the witness himself or the sufficiency of the sources of knowledge or the positiveness of his impression; but simply that his testimony, otherwise unobjectionable, is not needed, is *superfluous." Wigmore on Evidence,* § 1918 at 11. Other commentators agree. *See* Charles McCormick, *McCormick on Evidence* § 11 at 44–45 (John William Strong, ed., 4th ed. 1992) (noting the acceptance of Wigmore's principle by trial courts). Moreover, the Advisory Committee Notes to the analogous federal rule states that if "attempts are made to introduce meaningless assertions which amount to nothing more than choosing up sides, exclusion for lack

of helpfulness is called for by the rule." 56 F.R.D. 183, 281 (1972). *See also Whittington v. State,* 523 So.2d 966, 982 (Miss.1988) (*Lee, J.,* dissenting) (suggesting that opinion not helpful to the jury "merely told the jury how the case should be decided, thereby shifting responsibility for decision from the jury to the witness."); *Gross v. State,* 730 S.W.2d 104, 106 (Tex.Ct.App. 1987) (testimony of minor in punishment phase of conviction for indecency with the minor was of little value "because the witnesses are in no better position to form an opinion than the jury itself, and [its] allowance ... would tend to suggest that the jurors may shift their responsibility to the witnesses.").

Moreover, there were many inconsistencies and implausible elements in Cunningham's account of the events leading up to the stop by the officer and the reasons for his conduct at the scene of the stop. Under these circumstances, it is highly probable that Dellaire's opinion testimony did not affect the verdict.

## II.

[¶ 8] Cunningham's contention that the evidence is insufficient to support the verdicts and cannot justify a finding that he was operating the vehicle is without merit. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State to determine whether a factfinder rationally could find, beyond a reasonable doubt, every element of the offense charged. *State v. Marden*, 673 A.2d 1304, 1311 (Me.1996). The same standard applies to a conviction based on circumstantial evidence. *State v. Caouette*, 462 A.2d 1171, 1176 (Me.1983). A factfinder could have relied on the officer's testimony and rationally concluded beyond a reasonable doubt that Cunningham was the operator of the vehicle.

The entry is:

Judgments affirmed.