MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 41
Docket:        Cum-22-36
Argued:        December 6, 2022
Decided:       July 27, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.


STATE OF MAINE

v.

ABDIRAHMON A. ABDULLAHI a.k.a. ABDIRAHMON A. ADBULLAHI


HORTON, J.

[¶1]  Abdirahmon A. Abdullahi[1] appeals from a judgment of conviction of unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A) (2023), and falsifying physical evidence (Class D), 17-A M.R.S. § 455(1)(A) (2023), entered by the trial court (Cumberland County, *Warren, J.*) after a jury trial.[2]  Abdullahi argues that the court erred in (1) denying his motion to suppress evidence seized as the result of what Abdullahi contends was an

---

[1]  Abdullahi's surname was spelled "Adbullahi" on his driver's license, and the misspelling caused confusion during the trial court proceedings.  "Adbullahi" appears in our caption as an alternate spelling because it is how Abdullahi's surname appears in the trial court's docket record.  At oral argument, it was confirmed that "Abdullahi" is the correct spelling.

[2]  The parties agreed that a forfeiture count would be tried to the court.  After a hearing, the court entered a forfeiture order regarding cash found in Abdullahi's possession after his arrest.  *See* 15 M.R.S. § 5826 (2023).  Abdullahi's appeal focuses on the trafficking conviction and does not separately contest either the falsification conviction or the forfeiture order, although both would likely have to be set aside if we were to agree that his motion to suppress should have been granted.

unlawful arrest, (2) allowing law enforcement officers to testify as lay witnesses at trial on matters that required expert testimony, (3) including in its jury instructions an instruction on a permissible inference contained in the applicable drug trafficking statute, and (4) denying his motions for a judgment of acquittal and a new trial. We affirm the judgment.

## I. BACKGROUND

[¶2] "Viewing the evidence admitted at trial in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt." *State v. Athayde*, 2022 ME 41, ¶ 2, 277 A.3d 387. On June 24, 2019, a Maine State Police corporal stopped a vehicle operated by Abdullahi for speeding on the Maine Turnpike. As detailed below, in the course of the traffic stop, the corporal discovered that Abdullahi had been in possession of a bag containing individual packages of what appeared to be cocaine base. After his arrest, Abdullahi was found to be in possession of $1,091 in cash.

[¶3] On June 26, 2019, the State charged Abdullahi by criminal complaint with unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A), falsifying physical evidence (Class D), 17-A M.R.S. § 455(1)(A), and criminal forfeiture, 15 M.R.S. § 5826 (2023). The since-amended statute

under which Abdullahi was charged with trafficking provided that proof that a person intentionally or knowingly possessed at least four grams of cocaine base, a Schedule W drug, "gives rise to a permissible inference" that the person was trafficking in cocaine base. 17-A M.R.S. § 1103(1-A)(A), (3)(B) (2018).[3] On October 11, 2019, a grand jury indicted Abdullahi for the same two offenses and the forfeiture charged in the complaint. The record does not indicate that an arraignment was held on the indictment.[4]

## A.    Motion to Suppress

[¶4]  Abdullahi filed a motion to suppress the evidence that he was in possession of cocaine base at the time of the traffic stop, and the trial court (*French, J.*) held an evidentiary hearing on the motion. Only the Maine State Police corporal testified at the suppression hearing. The court entered an order in which it found the following facts, all of which are supported by competent

---

[3]  Title 17-A M.R.S. § 1103 has since been amended. *See* P.L. 2021, ch. 396, § 3 (effective Oct. 18, 2021) (codified at 17-A M.R.S. § 1103(3)(B) (2023)).

[4] Abdullahi has not raised the lack of arraignment as an issue either in the trial court or on appeal, nor, on this record, would it have availed him to do so. As long as an accused has notice of the charges and an opportunity to prepare a defense, a conviction need not be reversed for lack of arraignment. *See Garland v. Washington*, 232 U.S. 642, 646-47 (1914) (overruling a requirement of technical enforcement of formal rights in criminal procedure); *State v. Kovtuschenko*, 576 A.2d 206, 207 (Me. 1990) ("Any failure to comply with the arraignment procedure . . . is not jurisdictional unless the defendant has been prejudiced, and will not result in reversal if the issue is not raised prior to trial." (citation and quotation marks omitted)).

evidence in the record. *See Athayde*, 2022 ME 41, ¶ 7, 277 A.3d 387; *State v. Rosario*, 2022 ME 46, ¶ 8, 280 A.3d 199.

[¶5]  On June 24, 2019, the corporal stopped a vehicle being operated by Abdullahi for traveling on the Turnpike at eighty-five miles per hour—a rate of speed in excess of the posted speed limit.  Because Abdullahi could not produce a driver's license, a vehicle registration, or proof of insurance (although he later showed the corporal a photo of his license on his cell phone), the corporal suspected that the vehicle might not belong to Abdullahi.  After obtaining the vehicle registration information through a dispatcher, the corporal spoke by telephone with the owner of the vehicle, who told him that she did not know who Abdullahi was and had not given him permission to use the vehicle.  The corporal testified that he decided to call a tow truck to take the car.  He placed Abdullahi in handcuffs for safety reasons because Abdullahi was acting nervous and fidgety and because the corporal also needed to pay attention to cleaning out his cruiser so he could give Abdullahi a ride off the Turnpike.  Toward the end of the stop, the corporal determined that Abdullahi had been in possession of what appeared to be an illegal drug and placed him under arrest.

[¶6]  The court denied Abdullahi's motion to suppress.  The court determined that Abdullahi's detention during the traffic stop was lawful

because, based on the information the corporal obtained from the vehicle owner, he had probable cause to arrest Abdullahi when he placed Abdullahi in handcuffs. The court also determined that the drug evidence would not have been subject to suppression even if the arrest was unlawful because Abdullahi had not demonstrated a "nexus between the improper police conduct and the evidence seized."

## B.      Trial and Motions for Judgment of Acquittal and New Trial

[¶7]  The court (*Warren, J.*) held a three-day jury trial on the charges of drug trafficking and falsifying evidence on July 22, 23, and 26, 2021.

[¶8]  The evidence that was admitted included a police cruiser video recording of the traffic stop. The video showed that, as Abdullahi was exiting the vehicle he had been driving and before he was handcuffed, he threw an object under the vehicle. The same video later showed that Abdullahi began sliding toward the object after he was handcuffed and seated on the shoulder of the road. However, the video showed the tow truck driver, who had been called to the scene, noticing the object and picking it up before Abdullahi reached it.

[¶9]  The court heard testimony from three law enforcement officers, including the corporal, and a chemist at the Maine Health and Environmental

6

Testing Laboratory. The corporal testified that the tow truck driver handed him the object that Abdullahi had thrown under the car, that he seized it because it appeared to be a plastic bag containing illegal drugs, and that he then placed Abdullahi under arrest. At the State Police barracks, where the corporal transported Abdullahi, the corporal requested assistance in identifying and handling the contents of the bag from two State Police sergeants who had more experience than the corporal in drug investigations. The three officers testified at trial regarding the appearance and weight of the drugs and their experience in handling drug trafficking investigations.[5] The three officers determined that the object the corporal had seized was a plastic bag weighing twenty-six grams and containing forty-five smaller baggies, each of which contained what they testified appeared to be cocaine base.

[¶10] On the second day of trial, the State sought to present the chemist to testify as an expert witness on drug testing, to support its contention that the forty-five baggies contained cocaine base in an amount sufficient to generate a permissible inference that Abdullahi was trafficking in cocaine base. 17-A M.R.S. § 1103(3). Abdullahi objected to the chemist's testimony, arguing

---

[5] Abdullahi made a blanket objection to the testimony of one of the sergeants on the ground that the State had not designated the witness as an expert. The court overruled the objection, noting that the sergeant could still testify as a lay witness based on his experience. *See infra* n.11. Abdullahi did not raise a similar objection to the testimony of the other officers.

that, because the chemist had tested and weighed fewer than four grams of the substance contained in the baggies, his testimony could not be admitted to support a permissible inference of trafficking. *See* 17-A M.R.S. § 1103(3)(B) (2018). After the parties conducted a voir dire examination of the chemist outside the presence of the jury, the court ruled that the chemist would be permitted to testify about the tests he performed but would not be permitted to testify that the forty-five baggies contained a total of four or more grams of cocaine base. The chemist testified before the jury that, pursuant to what he said was an accepted testing protocol, he randomly selected five of the forty-five baggies for testing and measurement and concluded that all five contained cocaine base having a total weight of 1.89 grams.

[¶11] After the State and defense had rested, Abdullahi moved for a judgment of acquittal, and the court denied the motion. *See* M.R.U. Crim. P. 29. The court provided proposed jury instructions to the State and Abdullahi, including the permissible-inference instruction contained in 17-A M.R.S. § 1103(3). Abdullahi objected on the ground that the State's evidence was insufficient to permit a finding beyond a reasonable doubt that the forty-five baggies contained at least four grams of cocaine base, and therefore the permissible inference had not been generated for purposes of including it in

jury instructions. The court overruled the objection. After the State and Abdullahi presented closing arguments, the court provided instructions to the jury, including an instruction concerning the permissible inference. The jury found Abdullahi guilty of both the trafficking count and the falsifying evidence count.

[¶12] After the verdict, Abdullahi filed a renewed motion for a judgment of acquittal and a motion for a new trial. The court held a hearing on the motions. Abdullahi argued that the court erred when it provided the permissible-inference instruction to the jury because the chemist's testimony was insufficient to generate the inference. He also argued that the court erred by permitting the law enforcement officers to testify as lay witnesses about the contents of the baggies. The court denied Abdullahi's motions. The court then entered a judgment on the verdict and sentenced Abdullahi to two years in prison, with all but six months suspended, and two years of probation.

[¶13] Abdullahi timely appealed from the judgment of conviction. *See* 15 M.R.S. § 2115 (2023); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

## A.    The Denial of Abdullahi's Motion to Suppress

[¶14]   Relying mainly on the Fourth Amendment to the United States Constitution,[6] Abdullahi contends that his motion to suppress should have been granted because the bag that he threw under the vehicle he had been driving would not have been discovered but for what he asserts was an illegal de facto arrest.  We review the motion court's factual findings for clear error and its legal conclusions de novo. *State v. Fleming*, 2020 ME 120, ¶ 25, 239 A.3d 648.  We conclude that the court did not err by denying the motion to suppress.[7]

[¶15]  We have explained that the police need not have probable cause to detain a suspect while investigating a suspected violation of law.  *See State v. Langlois*, 2005 ME 3, ¶¶ 6-11, 863 A.2d 913 (determining that an officer's

---

[6]   Abdullahi's brief also alludes to "section 5" of the Maine Constitution in support of his suppression argument, but it does not develop any argument for construing the Maine Constitution's protection against unreasonable search and seizure more broadly than the protection embodied in the Fourth Amendment to the United States Constitution.  Accordingly, we limit our analysis to the latter. *See State v. Hemminger*, 2022 ME 32, ¶ 8 n.4, 276 A.3d 33.

[7]   The State has not challenged Abdullahi's standing to seek suppression of the bag.  To have standing to challenge the legality of a search or arrest, the defendant's own Fourth Amendment rights must have been violated. *Rakas v. Illinois*, 439 U.S. 128, 130-31, 134 (1978).  "[A]n illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place.'" *United States v. Salvucci*, 448 U.S. 83, 91-92 (1980) (quoting *Rakas*, 439 U.S. at 143).  To make a showing of a legitimate expectation of privacy, a defendant "must show that he had both a subjective expectation of privacy and that society accepts that expectation as objectively reasonable." *United States v. Vilches-Navarrete*, 523 F.3d 1, 13 (1st Cir. 2008).  Here, the bag was discovered on the pavement where it landed after Abdullahi threw it under a vehicle he did not own.  However, because there was no contention or finding that Abdullahi had abandoned the bag, we do not address whether Abdullahi had standing and consider the merits of his claim.

ordering of a person, at gunpoint, to lie down was not a de facto arrest but rather an investigatory detention). In the course of an investigative stop, police officers are also authorized "to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985); *see, e.g.*, *State v. Kirby*, 2005 ME 92, ¶¶ 12-17, 878 A.2d 499. However, a traffic stop or other investigatory stop must not last longer than reasonably necessary to investigate the suspected violation of law. *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015); *Florida v. Royer*, 460 U.S. 491, 500 (1983) ("The scope of the detention must be carefully tailored to its underlying justification."); 4 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment*, § 9.2(f) at 451 (6th ed. 2020). "[I]f a person is stopped on suspicion that he has just engaged in criminal activity, but the suspect identifies himself satisfactorily and investigation establishes that no offense occurred, there is no basis for further detention, and the suspect must be released." 4 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment*, § 9.2(f) at 443-44.

[¶16] When an investigative stop is prolonged beyond what is reasonably necessary for an investigation of the suspected violation, then, regardless of the officer's intent or purpose, the stop may have evolved into a

de facto arrest that must be supported by probable cause. *State v. Donatelli*, 2010 ME 43, ¶¶ 11-18, 995 A.2d 238 ("Where police actions taken during the detention exceed what is necessary to dispel the suspicion that justified the stop, the detention may amount to an arrest and is lawful only if it is supported by probable cause." (quotation marks omitted)). An investigative stop that amounts to a de facto arrest can constitute an unconstitutional seizure if it is not supported by probable cause. *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985). The United States Supreme Court has explained that the measure of whether an investigative detention has evolved into an arrest does not depend on a bright-line test but is instead based on common sense and human experience. *Id.*

[¶17] "Probable cause exists where facts and circumstances within the knowledge of the officers and of which they have reasonable trustworthy information would warrant a prudent and cautious person to believe the arrestee did commit or is committing the felonious offense." *State v. Lagasse*, 2016 ME 158, ¶ 13, 149 A.3d 1153 (quotation marks omitted). Probable cause has a very low threshold. *Id.* ¶ 14. The determination of probable cause is an objective one and is not based on whether the officer believed there was probable cause. *State v. Forsyth*, 2002 ME 75, ¶ 10, 795 A.2d 66.

12

[¶18] Abdullahi contends that the bag containing cocaine base would not have been discovered but for the fact that his detention was unlawfully prolonged to the point that it evolved into an illegal de facto arrest. We conclude that Abdullahi's detention was neither unreasonably prolonged nor unreasonably restrictive. Abdullahi's inability to produce the registration for the vehicle he was driving justified the corporal's further investigation into whether Abdullahi had permission to use the vehicle. The corporal's conversation with a person he reasonably understood to be the vehicle's owner furnished probable cause for him to believe that Abdullahi's use of the vehicle constituted a violation of the law prohibiting unauthorized use of a motor vehicle. *See* 17-A M.R.S. § 360(1)(A) (2023). In light of that conversation, the corporal's decision to have the vehicle towed, which was a major reason for the extended duration of the stop, was appropriate. If this was a de facto arrest, it was supported by probable cause. Moreover, the corporal's decision to handcuff Abdullahi while he attended to other tasks was independently justified in terms of officer safety. The court did not err in denying Abdullahi's motion to suppress.

**B.    The Admission of Lay Opinion Testimony by Police Officers**

[¶19]  During the trial, the corporal and both sergeants testified about their observations and opinions concerning the contents of the plastic bag recovered at the scene of the stop.  Although the extent of their experience with drug investigations varied, each officer testified about his own experience with drug trafficking investigations.   The sergeants testified that the substance inside the smaller bags within the large bag appeared to be "crack cocaine"—a term sometimes used to describe cocaine base.  One of the sergeants testified that he determined, using a digital scale, that the large bag and its contents weighed twenty-six grams.  The sergeants also testified that in their experience the manner by which the forty-five smaller bags were packaged inside the larger bag, the fact that Abdullahi was not using his own vehicle, and the fact that Abdullahi was found to be in possession of $1,091 in cash were all indicative of drug trafficking.

[¶20]  Abdullahi argues that the three police officers should not have been allowed to give their testimony without being designated and qualified as expert witnesses.  The State did not designate the officers as expert witnesses, so their testimony was admissible only if it qualified as lay opinion evidence rather than expert opinion evidence.  *See* M.R. Evid. 701.  "We review challenges

14

to the admission of lay opinion testimony for an abuse of discretion."  *State v. Patton*, 2012 ME 101, ¶ 20, 50 A.3d 544.

### 1.    Lay Opinion and Expert Opinion Evidence

[¶21]   Under Maine Rule of Evidence 701, lay witnesses may provide testimony in the form of opinions or inferences as long as the testimony is "(a) [r]ationally based on the witness's perception; and (b) [h]elpful to clearly understanding the witness's testimony or to determining a fact in issue."  A witness's opinion must be "adequately grounded on personal knowledge or observation just as would be the case with simple statements of fact."  Field & Murray, *Maine Evidence* § 701.1 at 365 (6th ed. 2007).  Lay opinion evidence is appropriate when "the subject of inquiry is one which is plainly comprehensible by the jury and of such a nature that unskilled persons would be capable of forming correct conclusions respecting it."  *Ginn v. Penobscot Co.*, 334 A.2d 874, 883 (Me. 1975).

[¶22]  An opinion is not admissible as lay witness testimony if it involves "knowledge, skill, experience, training, or education" that is beyond the comprehension of an ordinary person.  *See* M.R. Evid. 702; *State v. Woodburn*, 559 A.2d 343, 346 (Me. 1989) ("[B]efore admitting expert testimony the trial court must consider (1) whether the matter is beyond common knowledge so

that the untrained layman will not be able to determine it intelligently and (2) whether the witness is qualified to give the opinion sought."). If such an opinion is admissible at all, it would be as expert opinion evidence pursuant to Maine Rule of Evidence 702.

[¶23] The distinction between opinion testimony and fact testimony is not always clear, because whether something is true as a matter of fact often proves to be a matter of opinion. *See State v. Cunningham*, 1997 ME 60, ¶ 4, 691 A.2d 1219 (1997); *see Cent. R.R. Co. of N.J. v. Monahan*, 11 F.2d 212, 214 (2d Cir. 1926) ("The line between opinion and fact is at best only one of degree, and ought to depend solely upon practical considerations, as, for example, the saving of time and the mentality of the witness."). Lay opinion evidence can be admitted as a means of conveying a "short-hand rendering of the facts" that underlie the opinion. *Cunningham*, 1997 ME 60, ¶ 4, 691 A.2d 1219; *State v. Bowen*, 366 A.2d 174, 177 (Me. 1976) (explaining that lay opinion evidence may include facts such as "[s]peed, identity, age, size, quantity, etc."); *Stacy v. Portland Publ'g Co.*, 68 Me. 279, 285-86 (1878); M.R. Evid. 701 Advisers' Note to former M.R. Evid. 701 (Feb. 2, 1976).

[¶24] Although the line between admissible lay opinion evidence and expert opinion evidence can be difficult to define, a lay opinion must be based

"wholly and solely" on the firsthand knowledge, perception, or observation of the witness, *Mitchell v. Kieliszek*, 2006 ME 70, ¶ 13, 900 A.2d 719 (quotation marks omitted), whereas an expert opinion may be based on information made known to the expert. Lay opinion testimony is thus inadmissible if it is not based on knowledge obtained through the witness's own perception and personal experience. *See Chrysler Credit Corp. v. Bert Cote's L/A Auto Sales, Inc.*, 1998 ME 53, ¶¶ 21-22, 707 A.2d 1311; *see also Cunningham*, 1997 ME 60, ¶¶ 5-6, 691 A.2d 1219. In *Chrysler Credit*, we determined that a Subaru marketing manager's testimony about a dealership's lost profits was not admissible as lay opinion evidence because his analysis was drawn largely from information he had analyzed about current and future sales trends in the applicable motor vehicle market, not from his own experience, perceptions, and observations. *Chrysler Credit Corp.*, 1998 ME 53, ¶¶ 22-23, 707 A.2d 1311.

[¶25] On the other hand, the fact that a witness may have specialized training or experience does not transform what is otherwise a lay opinion into that of an expert. *See United States v. Mast*, 999 F.3d 1107, 1112 (8th Cir. 2021). Thus, whether opinion testimony is admissible as lay opinion evidence or can only be admitted as expert opinion evidence is primarily a function of two variables—the extent to which the witness's foundation for giving the opinion

consists of the witness's own perceptions, observations, and experiences as opposed to the knowledge and experiences of others; and whether the subject of the opinion is so "specialized" as to place it beyond the ability of "unskilled persons [to be] capable of forming correct conclusions respecting it." *Ginn*, 334 A.2d at 883.

### 2. Police Officer Opinion Testimony

[¶26]  As with the admissibility of opinion testimony by other fact witnesses, the admissibility of opinion testimony by a police officer who has not been designated as an expert witness depends on the extent to which the opinion to be elicited is based on the officer's own perception and knowledge and is within an ordinary person's capacity to understand.

[¶27]  We recently upheld the admissibility of a police officer's lay opinion testimony "that in his experience—gained from many child sexual assault investigations and interviews—a victim's memory of traumatic events was '[v]ery often' fragmented." *State v. Hunt*, 2023 ME 26, ¶ 46, 293 A.3d 423. Similarly, although police officers often receive training in identifying intoxication and bloodstains, we have upheld the admission of lay opinion testimony by police officers on a person's state of intoxication and on the existence of bloodstains, based on our view that the knowledge necessary to

18

form the opinions is not a matter of "knowledge, skill, experience, training, or education" beyond the ordinary person's ability to understand without expert guidance.[8]  *See State v. Libby*, 153 Me. 1, 7-8, 133 A.2d 877 (1957); *State v. Wilbur*, 278 A.2d 139, 143 (Me. 1971).  We have said specifically that the statutes involving drug recognition experts "do not bar a nonexpert officer, *or even a layperson*, from testifying to his or her observations of a driver's impairment or the conduct and results of a field sobriety test."  *See State v. Atkins*, 2015 ME 162, ¶ 16, 129 A.3d 952 (emphasis added); *see also State v. Barnard*, 2001 ME 80, ¶ 12 n.9, 772 A.2d 852; *State v. Curtis*, 2019 ME 100, ¶ 25, 210 A.3d 834.

[¶28]  More to the point, we have similarly upheld the admission of police officers' opinion testimony about the identity of drugs based on experience gained in law enforcement.  *Barnard*, 2001 ME 80, ¶ 12 n.9, 772 A.2d 852 ("The identity of a drug can be proved by evidence in the form of opinion testimony if presented by someone who identifies the substance and who is sufficiently experienced with the drug."); *accord Curtis*, 2019 ME 100, ¶ 25, 210 A.3d 834

---

[8]  Importantly, the requirement that lay opinion evidence be understandable to an ordinary person, such as a juror, without expert guidance does not mean that an ordinary person must actually have perceived, observed, or experienced the same matters covered in the witness's opinion.  Thus, a person need not have experience with intoxicated persons or bloodstains in order to be qualified to serve on a jury in a trial involving lay opinion testimony on those subjects.  In fact, the opposite is true: lay opinion testimony is not admissible if the jury is as capable as the witness at forming the opinion.  *See State v. Peaslee*, 2020 ME 105, ¶ 11, 237 A.3d 861.

("In the absence of a chemical analysis, other direct and circumstantial evidence can establish beyond a reasonable doubt the identity of drugs. That evidence can include testimony of a witness who has experience based on familiarity with the drugs through *law enforcement*, *prior use*, *or trading*." (alteration and quotation marks omitted)(emphasis added)).[9] Although the issue of the difference between lay and expert opinion testimony was not addressed in those cases, neither *Barnard* nor *Curtis* states that either a drug user or a police officer must be designated as an expert witness in order to testify as to the identity of a drug. In fact, in *Curtis*, we quoted with approval a federal appeals court holding that evidence of the identity of a drug may derive from "lay

---

[9] The First Circuit, in *United States v. Valdivia*, has explained that a law enforcement officer may be qualified as both a lay witness and expert witness in the same case, and there are no bright line rules to differentiate between the two types of testimony. 680 F.3d 33, 49-51 (1st Cir. 2012). Specifically, an officer need not have scientific or technical expertise to testify as a lay witness in drug cases, as long as the testimony is based on personal knowledge acquired through the officer's own perceptions and observations through experience with prior drug cases. *Id.*; *see United States v. Ayala-Pizarro*, 407 F.3d 25, 28-29 (1st Cir. 2005) (allowing an officer to testify as a lay witness because the testimony was based on knowledge that he obtained by virtue of his position as a police officer); *United States v. Moon*, 802 F.3d 135, 147-48 (1st Cir. 2015) (upholding lay opinion testimony in a drug case by an officer with significant experience identifying controlled substances when purchasing drugs undercover). Other circuits have ruled differently. *See United States v. Watson*, 260 F.3d 301, 307-08 (3d Cir. 2001) ("[T]he operations of narcotics dealers have repeatedly been found to be a suitable topic for expert testimony because they are not within the common knowledge of the average juror.") (collecting cases); *United States v. Johnson*, 617 F.3d 286, 293 (4th Cir. 2010) ("At bottom, Rule 701 forbids the admission of expert testimony dressed in lay witness clothing.") (alteration and quotation marks omitted)); *United States v. Oriedo*, 498 F.3d 593, 603 (7th Cir. 2007) (explaining that one agent's testimony was expert in nature because "he brought the wealth of his experience as a narcotics officer to bear on [his] observations and made connections for the jury based on that specialized knowledge"); *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1244-46 (9th Cir. 1997) (concluding that the agents' testimony was expert in nature because they used their "training and experience" to testify about behaviors consistent with "an *experienced* drug trafficker" (quotation marks omitted)).

experience based on familiarity through prior use, trading, or law enforcement." *Curtis*, 2019 ME 100, ¶ 25, 210 A.3d 834 (quotation marks omitted).

[¶29] Abdullahi concedes that drug users who are sufficiently familiar with a drug may give lay opinion testimony about the appearance and characteristics of the drug but contends that police officers must qualify as expert witnesses in order to give identical opinion testimony. If individuals who use and traffick in drugs may provide lay opinion testimony about drugs and drug trafficking based on their personal perceptions, observations, and experiences, we see no reason to prohibit police officers from giving lay opinion testimony on the same topics based on their own personal perceptions and observations gained through different means.

[¶30] Whether opinion evidence may be given only by a qualified expert depends more on the complexity of the opinion rather than the identity of the witness. Just as whether a person is intoxicated is a subject fit for lay opinion testimony, what cocaine base looks like is not a matter about which only persons who have specialized "knowledge, skill, experience, training, or education" can form an opinion. M.R. Evid. 702. Similarly, a witness need not

have specialized training and experience to form an opinion about common practices in drug trafficking.

[¶31]   We emphasize that although the precise line between lay and expert opinion evidence may not be sharp, we are not suggesting that the line cannot be drawn.  As we have said, "[t]he two categories of expert and lay opinion testimony are thus mutually exclusive."  *Mitchell*, 2006 ME 70, ¶ 14, 900 A.2d 719; *cf. Ragland v. State*, 870 A.2d 609, 620 (Md. 2005)("[B]y permitting testimony based on specialized knowledge, education, or skill . . . , parties may avoid the notice and discovery requirements of our rules and blur the distinction between the two rules.  Accordingly, we . . . hold that Md. Rules 5-701 and 5-702 prohibit the admission as 'lay opinion' of testimony based upon specialized knowledge, skill, experience, training or education.").  In the case of police testimony, it is important that officers be designated as experts when they are expected to offer opinions based on their "knowledge, skill, experience, training, or education" that is beyond the comprehension of an ordinary person.  *See* M.R. Evid. 702; M.R.U. Crim. P. 16(a)(2)(G); *Woodburn*, 559 A.2d at 346.

### 3.    The Admissibility of the Police Officers' Testimony Here

[¶32]    At trial, the corporal testified that his experience included "approximately six years of experience on the road dealing with . . . drug cases on traffic stops and in residences." He testified that he identified that the drugs seized during the course of the traffic stop "appeared to be cocaine." The corporal explained that the package of narcotics seized at the site of the traffic stop was consistent with what he had seen in other circumstances for packaging of cocaine base for resale. On cross-examination, the corporal testified that he was "not a drug guy,"[10] which is why he sought assistance from the two other state officers who testified at trial.

[¶33] The sergeants gave more extensive testimony about the cocaine base in the bag that Abdullahi had tossed under the car, based on their more extensive experience in drug trafficking investigations. They testified that, based on their observations and experience, they were of the opinion that certain circumstances surrounding the stop—including the manner in which the forty-five smaller baggies were packaged, Abdullahi's use of a vehicle he did not own, and the large amount of cash he was carrying—were indicative of drug

---

[10] The corporal testified that he did not have any "special expertise or training or experience in narcotics investigations" and had only some "experience" with drug and drug trafficking investigations.

trafficking. One sergeant testified that he weighed the large bag at twenty-six grams and that the smaller baggies inside it each contained what appeared to be a gram or a half gram of cocaine base.

[¶34] It is noteworthy that when eliciting the opinions, the State's foundational questions pointedly emphasized the officers' training and special expertise. For example, the State questioned one of the sergeants without objection as follows:

Q:   And in the course of your experience in law enforcement, do you have particular experience in narcotics investigations?

A:   Yes.

Q:   Have you had specialized training in that area?

A:   Yes.

Q:   About how many investigations would you roughly say you've been involved in involving crack cocaine?

A:   Two dozen or so at least, involving just specifically crack cocaine.

Q:   And based on your training and your experience, what did those little ties appear to be to you?

Emphasizing a police officer's specialized expertise, particularly if it was acquired as a result of training or study rather than observation, as a preface to opinion questions, may be inconsistent with proffering the officer as a lay

24

witness.[11] Qualifying any witness to give lay opinion testimony as if the witness were an expert risks impermissibly bolstering the reliability of the witness's opinion. *See Pelletier v. Pelletier*, 2012 ME 15, ¶ 13, 36 A.3d 903 ("Determinations of witness credibility are uniquely within the fact–finder's authority, and the fact-finder is free to discount or entirely ignore testimony the fact-finder finds incredible." (quotation marks omitted)); *State v. Black*, 537 A.2d 1154, 1156 (Me. 1988) (improper bolstering of a witness's credibility "can have a profound impact on the outcome of the trial, particularly, as in the present case, when the prosecution offers the evidence to establish its case in chief."); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 553 (Tex. 1995) ("Expert witnesses can have an extremely prejudicial impact on the jury, in part because of the way in which the jury perceives a witness labeled as an expert. To the jury an expert is just an unbridled authority figure, and as such he or she is more believable." (alteration and quotation marks omitted));

---

[11] During a colloquy with counsel outside the hearing of the jury, the court made the same point:

> I think [the State is] limited to asking [the officer,] rather than as to his training [and his opinion about] consistency with trafficking, just in his experience do—is the packaging of these items something that's done for—for—in connection with sales of illegal things. And—and in his—in his experience do people carrying drugs sometimes drive someone else's car.
>
> . . . .
>
> . . . If he just sticks to his experience . . . I think he's entitled to testify about that.

*People v. Stewart*, 55 P.3d 107, 123 (Colo. 2002) ("Officer testimony becomes objectionable when what is essentially expert testimony is improperly admitted under the guise of lay opinions.").

[¶35]  Nonetheless, although the two sergeants in particular indicated that they had specialized training and expertise in drug investigations, Abdullahi did not object to much of the testimony he now contends on appeal should have been excluded.  When objections were made, the court sustained a number of them and might have sustained more.  Further, all three officers indicated that their testimony that the drugs seized during the traffic stops "appeared to be cocaine" and that carrying large amounts of cash and driving someone else's vehicle could be indicative of drug trafficking was based on their experience.[12]  *See* M.R. Evid. 701.  We conclude that the court did not err or abuse its discretion in its rulings on Abdullahi's objections to the officers' testimony.  As to the testimony admitted without objection, Abdullahi does not contend that the court committed obvious error nor, in light of the clearly admissible evidence of Abdullahi's guilt, do we see any.  *State v. White*, 2002 ME 122, ¶ 8, 804 A.2d 1146 ("For obvious error to require the reversal of a

---

[12] The officers' testimony that the seized materials "appeared" to be cocaine are simply statements of their perceptions at the scene.  Confirmation of the actual chemical composition of particular substances requires scientific testing and expert testimony.

26

judgment, the error must deprive the party of a fair trial or result in such a serious injustice that, in good conscience, the judgment cannot be allowed to stand.").

## C.    The Court's Permissible-Inference Instruction

[¶36]   Abdullahi argues that, because the evidence was insufficient to allow the jury to find that Abdullahi possessed four grams or more of cocaine base, the court should not have instructed the jury that, if it made such a finding, it could infer that Abdullahi was engaged in trafficking.[13]   The State contends that the instruction was proper because it had presented evidence sufficient to support a finding beyond a reasonable doubt that Abdullahi possessed at least four grams of narcotics.   We review preserved challenges to jury instructions for prejudicial error.[14]   *State v. Hanscom*, 2016 ME 184, ¶ 10, 152 A.3d 632.

---

[13]   Abdullahi also argues, for the first time on appeal, that the statutory permissible inference is unconstitutional as applied to him because the four-gram threshold at which the inference is permitted as to cocaine base has an unconstitutional discriminatory effect against persons of color. We review arguments not preserved in the trial court for obvious error.  M.R.U. Crim. P. 52(b); *State v. Nisbet*, 2018 ME 113, ¶ 16, 191 A.3d 359.  Because the argument is based on data and other information outside this record, we do not reach the merits of the argument.

[14]   The State also argues that Abdullahi did not preserve this argument for appellate review.  To preserve an objection to jury instructions, "a party must object before jury deliberations begin." *Clewley v. Whitney*, 2002 ME 61, ¶ 9, 794 A.2d 87.  "A generalized citation to a group of requested instructions is insufficient to properly preserve objections to a particular point in the court's jury instructions. . . . [A]n objecting party must state distinctly to the trial court the grounds for the objection to the jury instructions and point to the specific claimed inadequacy in the instructions given by the trial court." *Id.*   Here, Abdullahi specifically objected to the permissible-inference instruction prior to jury deliberations.  Therefore, his argument is preserved.

[¶37] The proper inquiry here is whether the State provided or generated evidence sufficient to justify the permissible-inference instruction. *See State v. Caouette*, 462 A.2d 1171, 1175 (Me. 1983); *State v. Tibbetts*, 379 A.2d 735, 737-38 (Me. 1977). This is true regardless of whether the State or defendant proposes an instruction. *See State v. Benson*, 155 Me. 115, 123, 151 A.2d 266 (1959). The evidence in the record necessary to support an instruction depends on the charge at issue. *See Caouette*, 462 at 1175. Here, to warrant the permissible-inference instruction, the State was required to present evidence that a reasonable juror could find sufficient to prove beyond a reasonable doubt that Abdullahi intentionally or knowingly possessed four or more grams of cocaine base. *See* 17-A M.R.S. § 1103(3)(B) (2018).[15]

---

[15] Section 1103 further provides, as is relevant here,

> Proof that the person intentionally or knowingly possesses [four grams or more of cocaine base] gives rise to a permissible inference under the Maines Rules of Evidence, Rule 303 that the person is unlawfully trafficking in scheduled drugs[.]

17-A M.R.S. § 1103(3), (3)(b) (2018). Maine Rule of Evidence 303(b) explains:

> The court may not direct a verdict against an accused based on a presumption or statutory provisions that certain facts are prima facie evidence of other facts or of guilt. The court may permit a jury to infer guilt or a fact relevant to guilt based on a statutory or common law presumption or prima facie evidence, if the evidence as a whole supports guilt beyond a reasonable doubt.

The rule provides a safeguard in regard to permissible inferences in that it "require[s] the court to evaluate the inference as a matter of fact and mention it only if in fact the inference is justified in general terms beyond a reasonable doubt." Field & Murray, *Maine Evidence* § 303.4 at 88 (6th ed. 2007).

[¶38] The evidence presented by the State that Abdullahi possessed four or more grams of cocaine base included the following:

- The testimony of the law enforcement officers identifying the substance recovered as cocaine base;

- The testimony of law enforcement officers that the plastic bag seized weighed twenty-six grams and contained forty-five individual baggies containing cocaine base;

- Photographs of the forty-five individual baggies inside the bag that was seized; and

- The testimony of a chemist that five baggies randomly selected from the forty-five all contained cocaine base weighing a total of 1.89 grams.

[¶39] We have previously endorsed the use of random sampling to establish the identity and quantity of illegal drugs. *See State v. Arbour*, 2016 ME 126, ¶ 24, 146 A.3d 1106 (allowing chemical testing evidence that five randomly selected packets out of 1,252 packets seized contained heroin "was sufficient for the jury to find beyond a reasonable doubt that 270 or more of the packets . . . contained heroin"). Here, the chemist's testimony that five randomly selected baggies all contained cocaine base weighing a total of 1.89 grams, coupled with the officers' testimony that all forty-five baggies appeared to contain quantities of cocaine base, was sufficient to support an inference that the bag seized from Abdullahi contained a total of at least four grams of cocaine base.

[¶40]  In sum, the record evidence was sufficient to justify the permissible-inference instruction.[16]  17-A M.R.S. § 1103(1-A)(A), (3).

## D.  The Court's Denial of Abdullahi's Motion for New Trial and for Judgment of Acquittal

[¶41]  Abdullahi's contention that the court erred in denying his motion for judgment of acquittal and motion for a new trial rests on the same arguments he presents here regarding his motion to suppress, the lay opinion testimony by police officer witnesses, the chemist's testing testimony, and the court's decision to give the jury an instruction regarding a permissible inference of trafficking.  "We review the denial of a motion for judgment of acquittal by viewing the evidence in the light most favorable to the State to determine whether a jury could rationally have found each element of the crime proven beyond a reasonable doubt."  *State v. Adams*, 2015 ME 30, ¶ 19, 113 A.3d 583 (quotation marks omitted).  "We review the trial court's decision on a motion for a new trial for an abuse of discretion and any findings underlying its decision for clear error."  *State v. Bilodeau*, 2020 ME 92, ¶ 15, 237 A.3d 156 (quotation marks omitted).  As previously explained, the State's evidence was

---

[16]  Although Abdullahi has not directly contested the sufficiency of the evidence that he possessed the bag containing cocaine base intentionally or knowingly, the evidence that he had physical possession of the bag before throwing it under the car in an attempt to hide it from the corporal was sufficient to support a finding that he intended to possess the bag and knew what it contained. *See* 17-A M.R.S. § 1103(1-A).

sufficient to support a finding that Abdullahi intentionally or knowingly possessed at least four grams of cocaine base. Likewise, although Abdullahi has not specifically challenged them, we see no error or abuse of discretion in the court's rulings regarding his falsification conviction and forfeiture order.

The entry is:

Judgment affirmed.

---

Kristine C. Hanly, Esq. (orally), Hanly Law, Portland, for appellant Abdirahmon A. Abdullahi

Jonathan Sahrbeck, District Attorney, and Carlos Diaz, Asst. Dist. Atty. (orally), Cumberland County District Attorney's Office, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2019-3332
FOR CLERK REFERENCE ONLY