MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2025 ME 65
Docket:       Cum-24-381
Argued:       May 7, 2025
Decided:      July 24, 2025

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

STATE OF MAINE

v.

KYLE M. FITZGERALD

MEAD, J.

[¶1]  The State of Maine appeals from an order entered by the trial court (Cumberland County, *McKeon, J.*) granting Kyle M. Fitzgerald's motion to suppress evidence obtained after the Maine State Police stopped her car on Interstate 295, detained her and her passengers until a drug detection dog could arrive to conduct a sniff, and then searched the car, seizing the drugs discovered inside.  15 M.R.S. § 2115-A(1) (2025); M.R. App. P. 21.

[¶2]  The court granted the motion after finding that officers lacked probable cause to conduct the search.  We do not reach that issue because we conclude that, well before the dog arrived and the search was conducted, the reasonable suspicion of a traffic violation justifying the initial stop had been investigated, and no reasonable suspicion of illegal drug activity justified

prolonging the detention of Fitzgerald and her passengers beyond that point.[1]

For that reason, we affirm the suppression order. *See State v. Sweeney*, 2019

ME 164, ¶ 13, 221 A.3d 130 ("[I]f a court's ruling is proper, we may affirm it on

grounds other than those stated by the trial court." (quotation marks omitted)).

## I. BACKGROUND

### A. Facts

[¶3] The relevant facts are drawn from three sources: the court's initial

order granting Fitzgerald's motion to suppress,[2] the court's oral findings at the

hearing on the State's motion for further findings and for reconsideration, and

the court's written order granting the State's motion for further findings in part

and denying the motion to reconsider. Because the State moved for further

findings pursuant to M.R.U. Crim. P. 41A(d), we will not assume that the trial

court found facts beyond those that it stated. *See State v. Ouellette*, 2024 ME 29,

¶ 11, 314 A.3d 253.

[¶4] On November 15, 2021, Fitzgerald was driving a car south on

Interstate 295 in Freeport. Maine State Trooper Nicholas Young stopped

---

[1] We also do not reach the State's contention that even if the dog's sniff of the car's interior violated the Fourth Amendment, suppression of the evidence was not warranted.

[2] The court denied the motion to suppress brought by a co-defendant, Dennis Jones. Jones is not a party to this appeal.

Fitzgerald because she was not wearing a seat belt and was driving substantially slower than the speed limit and staring straight ahead with her arms locked in front of her, although she appeared to notice Young traveling in the left lane. In the car with Fitzgerald were three passengers and two young puppies.

[¶5] Following the stop, Fitzgerald gave confused answers about where she was going and did not appear to know whether her destination was New Hampshire or Massachusetts. Fitzgerald and her passengers also gave contradictory answers regarding how long they had known each other, and Fitzgerald did not know the full name of one of her passengers, although she said they had been friends for ten years.

[¶6] The passenger in the right rear seat was "effusive and forthcoming" but also "anxious," holding up her identification in the back seat before Young even reached the car, an action he thought "bizarre" and "suspicious." The front passenger was "standoffish." The passenger in the left rear seat, who was not wearing a seatbelt, pretended to be asleep during the first few minutes of the stop. When Young attempted to confirm his identity, he spoke in a very low voice. He was eventually identified as Ja'Wayne Early from Alabama, but because Early left out the apostrophe when verbally giving Young his first

name, Young was unable to confirm Early's identity until forty-four minutes after the stop. Early had a $500 roll of currency in his pocket; he told Young that he worked but would not say what kind of work he did.

[¶7] Young requested a canine unit twenty-four minutes after the stop; a trooper arrived with his trained drug detection dog fifty-three minutes later, about seventy-seven minutes after the stop and thirty-four minutes after Young had confirmed Early's identity. The trooper had his dog sniff the car and then informed Young that there was probable cause to search it. A "substantial quantity" of illegal drugs was found.

**B. Procedure**

[¶8] In September 2022, a grand jury indicted Fitzgerald on six counts: three counts of aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(C-1)(1) (2025); aggravated trafficking of scheduled drugs (Class B), 17-A M.R.S. § 1105-A(1)(C-1)(4) (2025); unlawful possession of scheduled drugs (Class D), 17-A M.R.S. § 1107-A(1)(C) (2025); and unlawful possession of scheduled drugs (Class E), 17-A M.R.S. § 1107-A(1)(F) (2025).

The indictment also charged two counts of criminal forfeiture, 15 M.R.S. § 5826 (2021).[3] Fitzgerald pleaded not guilty at her arraignment.

[¶9] Fitzgerald moved to suppress all evidence derived from the search of her car, alleging that officers "prolonged the traffic stop without reasonable articulable suspicion of criminal activity" before conducting their search without probable cause. In July 2024, following a two-day evidentiary hearing, the court entered a written order granting the motion, finding that although the extended detention to wait for a drug detection dog to arrive was constitutional, the search of Fitzgerald's car was not.

[¶10] Pursuant to M.R.U. Crim. P. 41A(d), the State moved for further findings of fact and conclusions of law and for reconsideration of the suppression order. The court held a hearing at which it granted the motion in part and made further factual findings from the bench. The court denied the motion to reconsider, continuing to find that the search of Fitzgerald's car was not supported by probable cause. A subsequent written order memorialized the court's findings.

---

[3] The statute has since been amended, but not in a way that affects this appeal. *See* P.L. 2023, ch. 196, § 1 (effective Oct. 25, 2023) (codified at 15 M.R.S. § 5826(6) (2025)).

6

[¶11]  The State timely appealed.  15 M.R.S. § 2115-A(1), (4); M.R. App. P. 2B(b)(1), 21(a), (e).  The appeal was accompanied by the Attorney General's written approval.  15 M.R.S. § 2115-A(5); M.R. App. P. 21(b).

## II.  DISCUSSION

[¶12]  In its brief, the State challenges "only the trial court's legal conclusions and its ultimate decision, not its findings of fact."  Accordingly, our review is de novo.  *See State v. Thomas*, 2025 ME 34, ¶ 38, 334 A.3d 686; *State v. Lepenn*, 2023 ME 22, ¶ 15, 295 A.3d 139 ("We review a motion court's application of the law to undisputed facts de novo." (quotation marks omitted)); *State v. Croteau*, 2022 ME 22, ¶ 19, 272 A.3d 286 ("When a court has granted a motion to suppress based on findings of fact that are not disputed on appeal, the ultimate question . . . is a legal issue that we review de novo.").

[¶13]  At the hearing on her motion to suppress, Fitzgerald conceded that the initial stop for a seatbelt violation was lawful.  The question we must resolve is whether Fitzgerald's continued detention until the drug detection dog arrived was also lawful.[4]

---

[4] Fitzgerald relies only on the Fourth Amendment to the United States Constitution; she has not developed a specific argument that article I, section 5 of the Maine Constitution requires suppression of the evidence.  *See State v. Ouellette*, 2024 ME 29, ¶ 10 n.1, 314 A.3d 253.

[¶14]  *Rodriguez v. United States* is directly on point.  575 U.S. 348, 350 (2015).  When considering "whether the Fourth Amendment tolerates a dog sniff conducted after completion of a traffic stop," the United States Supreme Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures.  A seizure justified only by a police-observed traffic violation, therefore, becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.* (alterations and quotation marks omitted); *see State v. Abdullahi*, 2023 ME 41, ¶ 15, 298 A.3d 815 ("[A] traffic stop . . . must not last longer than reasonably necessary to investigate the suspected violation of law.").  Because "[a] dog sniff . . . is a measure aimed at detecting evidence of ordinary criminal wrongdoing," unlike "ordinary inquiries incident to the traffic stop" such as checking a driver's license or determining whether there are outstanding warrants, "a dog sniff is not fairly characterized as part of the officer's traffic mission." *Rodriguez*, 575 U.S. at 355-56 (alterations and quotation marks omitted).  The Court identified the "critical question" as "whether conducting the sniff prolongs—*i.e.,* adds time to—the stop." *Id.* at 357 (quotation marks omitted).

[¶15]  Under the holding in *Rodriguez*, "where a seizure is justified *only* by a police-observed traffic violation, officers may not prolong a stop to investigate another crime absent the reasonable suspicion ordinarily demanded to justify detaining an individual."  *United States v. Reyes*, 24 F.4th 1, 17 (1st Cir. 2022) (alteration and quotation marks omitted).  We conclude that the duration of Fitzgerald's detention reached its constitutional limit when Early's identity was confirmed, thirty-four minutes before the dog arrived.  At that point, "the officer's traffic mission" was complete, in that Trooper Young could have issued seatbelt violation citations to Fitzgerald and Early and ended the encounter.[5]  *Rodriguez*, 575 U.S. at 356.

[¶16]  As the State has acknowledged, extending the stop further required "[a] reasonable suspicion of further criminal wrongdoing."  *United States v. Cruz-Rivera*, 14 F.4th 32, 43 (1st Cir. 2021).  The State was very clear at oral argument in identifying the suspected criminal activity that it contends justified Fitzgerald's continued detention.  When asked "Articulable suspicion of what? . . . What is [the officer] suspecting? . . . It's drugs, isn't it?," the Assistant District Attorney answered, "Yes."  At the suppression hearing Trooper Young agreed, answering "No" to the question "[H]aving confirmed [Early's] identity,

---

[5] Trooper Young elected not to issue citations for those violations.

was there any remaining reason to keep these people waiting for the K-9 to arrive, other than your suspicion about some illegal drug activity?"

[¶17]  As support for its position, the State points to what it views as suspicious behavior exhibited by Fitzgerald and her passengers, as well as the potentially illegal transportation of underage puppies.  Although the circumstances noted by the State—*i.e.*, Fitzgerald's driving slower than the speed limit with her arms locked to the front; the car occupants' confused and contradictory answers concerning the car's destination and how long the occupants had known each other; and Trooper Young's initial difficulty in identifying Early and Early's possession of a roll of cash—may have aroused Trooper Young's suspicion generally, we cannot agree that they amount to an articulable and objectively reasonable suspicion of illegal drug activity.  *See State v. Lear*, 1998 ME 273, ¶ 5, 722 A.2d 1266 ("[A]n analysis of the propriety of an investigatory detention short of formal arrest necessarily involves both a subjective component (*i.e.*, actual articulable suspicion) and an objective component (*i.e.*, reasonable suspicion).").  The trooper's suspicion that something untoward was going on was a hunch—perhaps not conjured out of thin air, but a hunch nonetheless.  A reasonable suspicion sufficient to justify a detention requires "less than probable cause [but] more than a naked hunch."

*Cruz-Rivera*, 14 F.4th at 43 (quotation marks omitted); *see State v. Lovejoy*, 2024 ME 42, ¶ 16, 315 A.3d 744.

[¶18]  Trooper Young was candid at the suppression hearing when he was asked whether, at the point in the stop when he asked for backup, he had "a specific thing that [he was] suspicious of," answering, "It was a general suspicion of criminal activity."  The subsequent delay in confirming Early's identity did not add much to Young's suspicion, viewed objectively—although Early did not include the apostrophe in his first name when spelling it verbally, he otherwise spelled his name correctly, and included the apostrophe when asked to write out his name for the trooper.  Early also gave the trooper his correct date of birth, social security number, and state of residence.[6]  None of the car's occupants had outstanding warrants, current bail conditions, active probations, or criminal records for drug activity.  The State agreed that there was nothing in the record establishing that Fitzgerald was operating in a known drug corridor.

[¶19]  Viewing the "whole picture" presented by this record, *Cruz-Rivera*, 14 F.4th at 43 (quotation marks omitted), we conclude that after Early was

---

[6]  At the suppression hearing, Trooper Young agreed that, in the end, Early "wasn't actually being deceptive."

positively identified, the initially justified investigatory stop "last[ed] longer than reasonably necessary to investigate the suspected violation of law." *Abdullahi*, 2023 ME 41, ¶ 15, 298 A.3d 815. For that reason, the stop "violate[d] the Constitution's shield against unreasonable seizures," *Rodriguez*, 575 U.S. at 350, and the trial court did not err in granting Fitzgerald's motion to suppress.[7]

The entry is:

> Order granting Fitzgerald's motion to suppress affirmed.

---

Jacqueline Sartoris, Esq., District Attorney, and Carlos Diaz, Esq. (orally), Asst. Dist. Atty., Cumberland County District Attorney's Office, Portland, for appellant State of Maine

Daniel A. Wentworth, Esq. (orally), Law Offices of Dylan Boyd, Portland, for appellee Kyle M. Fitzgerald

Cumberland County Unified Criminal Docket docket number CR-2022-3601
FOR CLERK REFERENCE ONLY

---

[7] In reaching this conclusion, we do not fault Trooper Young, whom the trial court characterized as "professional and courteous" and found gave credible testimony.