2000 ME 211

**STATE of Maine**

v.

**Joshua BLACK.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 21, 2000.

Decided Dec. 12, 2000.

---

David W. Crook, District Attorney, Brad C. Grant, Asst. Dist. Atty., Paul Rucha, Asst. Dist. Atty., Augusta, for State.

Peter B. Bickerman, Esq., Verrill & Dana, LLP, Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] The State of Maine appeals from the judgment of the Superior Court (Kennebec County, *Atwood, J.*) vacating the judgment of the District Court (Augusta, *Vafiades, J.*) which found Joshua Black guilty of the crime of cruelty to animals.[1] The State contends that the Superior Court erred in concluding that there was insufficient evidence for the District Court to find Joshua Black guilty beyond a reasonable doubt. We vacate the judgment of the Superior Court.

---

**1.** Black was sentenced to thirty days jail, with all but three days suspended, with one year probation and a mandatory psychological evaluation. The court ordered Black to pay restitution to Johnson in the amount of $344, and he was prohibited from using or possessing firearms for one year. The court also ordered that Black have no contact with Wendy Johnson or Pam Isham. The execution of the sentence was stayed pending an appeal.

## I. BACKGROUND

[¶ 2] Viewing the evidence in a light most favorable to the State, the District Court could reasonably have found the following facts. Joshua Black lives on Summer Haven Road in Manchester, Maine, with his parents, John and Jean Black, and his brother, Jason Black. Wendy Johnson is a neighbor who also lives on Summer Haven Road. In 1997, Johnson owned two rabbits, Maggie and Scooter. Johnson kept the rabbits in hutches that were located some distance behind her house, near a stand of pine trees. The Black property extends behind the Johnson property and an adjacent property owned by the Demos family.

[¶ 3] In the late morning of December 9, 1997, Victoria Demos saw a man wearing a brown Carhart jacket and a hat, carrying a gun, and walking towards the Blacks' property.[2] Demos did not see anyone else in the neighborhood that day. She did, however, hear gunshots sporadically throughout the day. She also observed that her dog would look to the right, towards the Blacks' property, when there was a gunshot.

[¶ 4] At about 3:30 P.M. that afternoon, Johnson returned home from work, and while she was walking down her driveway, she heard a gunshot. She looked up and saw a person she identified as Joshua Black, standing on the Blacks' property about 250 to 300 feet away, leaning over and looking at something on the ground by his feet. He had close-cut black hair, and was wearing navy blue clothing[3] and a knit hat. She called to him, "Hey, you're shooting that gun kind of close to the houses, aren't ya?" Without receiving a response, Johnson went into her home.

[¶ 5] After three to five minutes inside her home, Johnson returned outside onto her deck. While on the deck, she heard three gunshots that seemed to originate from the Blacks' property where a tree stand was located. After hearing the three additional shots, Johnson stayed in the house for about twenty minutes. She then walked to the rabbit hutches to give them their "night treats," and found that both rabbits were missing. The doors to the hutches were shut and latched.

[¶ 6] After she looked around and found no sign of the rabbits, Johnson went back to her home and called the Black residence, and Joshua Black answered the phone. Black told Johnson that he had been home throughout the day. Johnson asked Black if he had seen anybody walking around her yard, and he answered in the negative. Johnson remarked to Black that her rabbits were gone, but she did not question him further. Johnson then reported to the Kennebec County Sheriff's Department that her rabbits were missing.

[¶ 7] Johnson was too ill to search for the rabbits on the following day but two days later resumed the search. She discovered footprints between the rabbit hutches and where she had seen Black standing two days earlier. Johnson also noticed a soiled spot in the exact location where Black had been standing. Maggie would have left such a mark in the snow because the bottom of her stomach was soiled from inside of the hutch. Eventually, after following a trail of blood and urine that originated from the spot where Johnson saw Black standing on December 9, she found Maggie up against a tree on the Blacks' property with a bullet hole in the rabbit's back.

---

2. Demos was not sure whether it was Black, did not see him fire his gun, and did not hear gunfire while she observed him.

3. Black and his family denied that he owned a blue coat. In defendant's Exhibit 4, however, Black is wearing a navy blue jacket under his orange hunting coat. Furthermore, Jason

Black owns a navy blue jacket. Viewed in the light most favorable to the State, a trier of fact could rationally conclude that Black either owned a navy blue coat or that he was wearing his brother's navy blue coat on December 9, 1997.

[¶ 8] When Trooper Mills examined the site on December 11, he found footprints leading off in several directions from the spot in the snow left by Maggie. According to Mills, the footprints led over the Demos property towards the Johnson property and the Black property. Two days later, the body of Scooter was found on the Blacks' property near the tree stand. Scooter had been shot, and both of his eyes had been punctured and were missing. Johnson believed that Scooter was found in just about the same spot from where she had heard gunshots on the afternoon of December 9. Autopsies of the two rabbits revealed that they had died from gunshot wounds.

[¶ 9] On December 14, Mills observed Black sitting in a vehicle parked at J & S Oil Company in Manchester, Maine. According to Mills, Black was wearing a brown "Carhart-style jacket" and had short hair. The home of the Black residence was searched, pursuant to a search warrant, and several twenty-two caliber weapons, as well as twenty-two caliber ammunition, were seized and turned over to the Maine State Police crime lab for forensic and ballistic examination. Black's rifle positively matched three out of the four shell casings found near Scooter's body.

[¶ 10] When Mills interviewed Black, Black admitted that he had been home throughout the majority of the day on December 9, but denied any involvement with the rabbits. Black said that he often used the twenty-two caliber rifle for hunting and target practice.[4] He also said that the gun was not accessible to him on De-

cember 9 because it was locked in a gun vault, and he did not have the key.

[¶ 11] On May 20, 1998, Black was arraigned in the Augusta District Court on charges of cruelty to animals, 17 M.R.S.A. § 1031(1)(A) (1997),[5] and discharging a firearm near a dwelling. After consolidation of the charges, the case proceeded to trial in Augusta District Court on January 8, 1999. Black was convicted on both counts. By Notice of Appeal dated January 22, 1999, Black appealed the judgments of conviction to the Superior Court. The Superior Court held that there was insufficient evidence to sustain a conviction on both charges. Accordingly, the Superior Court vacated the judgments of conviction and remanded to the District Court for entry of judgments of acquittal.

[¶ 12] Pursuant to 15 M.R.S.A. § 2115–A (1980 & Supp.2000) and M.R.Crim. P. 37B, the District Attorney sought and received the approval of the Attorney General to appeal the judgment of the Superior Court insofar as it vacated Black's conviction for cruelty to animals.[6] The State filed a timely notice of appeal from the judgment of the Superior Court with respect to the charge of cruelty to animals.

## II. DISCUSSION

[¶ 13] When the Superior Court acts as an intermediate appellate court, we review the decision of the trial court directly. *State v.. Wilder,* 2000 ME 32, ¶ 19, 748 A.2d 444, 449. Accordingly, we attach no presumptive validity to the Superior Court's judgment. *State v. Michael Z.,* 427 A.2d 476, 477 (Me.1981). The "'rea-

---

4. Joshua Black frequently engaged in target practice in the back portion of the Black property, near the tree stand.

5. Black was convicted under 17 M.R.S.A. § 1031(1)(A) (1997) (codified as amended at 17 M.R.S.A. § 1031(1)(A) (Supp.2000)). 17 M.R.S.A. § 1031(1)(A) (1997) provides:

    **1. Cruelty to animals.** Except as provided in subsection 1–A, a person, including an owner or the owner's agent, is guilty of cruelty to animals if that person:

    **A.** Kills or attempts to kill any animal belonging to another person without the consent of the owner or without legal privilege[.]

17 M.R.S.A. § 1031(1)(A).

6. The Attorney General expressly did not authorize an appeal from that portion of the Superior Court's judgment which vacated Black's conviction for discharge of a firearm near a dwelling.

sonable doubt which will prevent conviction'" must be the trial court's doubt "'and not that of an appellate court.'" *State v. Ardolino*, 1997 ME 141, ¶ 20, 697 A.2d 73, 80 (quoting *State v. Bonney*, 351 A.2d 107, 110 (Me.1976)).

[¶ 14] In examining the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged. *State v. Emerson*, 675 A.2d 978, 979 (Me.1996). We will overturn the District Court's judgment only if "no trier of fact rationally could have found the essential elements of the charged offense beyond a reasonable doubt." *State v. Tai*, 629 A.2d 594, 595 (Me.1993) (citing *State v. Reynolds*, 604 A.2d 911, 913 (Me.1992)). "It is not necessary for the finder of fact to be able to 'eliminate any possible alternative explanation of the evidence; the question is whether such alternative is sufficiently credible in light of the entire record that it necessarily raises a reasonable doubt.'" *State v. Poulin*, 1997 ME 160, ¶ 15, 697 A.2d 1276, 1280 (quoting *State v. Bowman*, 611 A.2d 560, 562 (Me.1992)).

[¶ 15] Pursuant to 17 M.R.S.A. § 1031(1)(A), the State was required to prove beyond a reasonable doubt (1) that Black acted with a culpable state of mind,[7] (2) that Black killed or attempted to kill Maggie and Scooter, and (3) that he did so without the consent of Johnson and without legal privilege. 17 M.R.S.A. § 1031(1)(A).[8]

[¶ 16] There is no dispute that the State presented ample evidence that the rabbits had been killed and that, from the manner of their deaths, the court could infer that the killer acted with the requisite mens rea. Nor is there any question that Johnson did not give her consent to the killings, and that Joshua Black was not privileged to kill the rabbits. The only issue challenged on appeal is whether there was sufficient evidence presented to prove that Black was, in fact, the person who killed the rabbits. Thus, we examine the entire record to determine whether the State presented sufficient evidence for the court to have concluded beyond a reasonable doubt that Black killed the rabbits.

[¶ 17] In denying that there is sufficient evidence to sustain the District Court's conviction, Black urges us, in effect, to redetermine the facts and conclude that the State's evidence was less credible than the evidence presented by the defense. In essence, Black is requesting that we assume the role of factfinder, reassess the credibility of the witnesses, and resolve conflicting testimony. Contrary to Black's assertions, however, the trial court was entitled to conclude that the Black family's version of the events was not credible in light of the evidence before it.[9] *See State v. Deering*, 1998 ME 23, ¶ 15, 706 A.2d 582, 586 ("The trier of fact is free to weigh the credibility of witnesses, and may disregard a witness's testimony entirely if it finds that witness to be incredible.") (citation omitted). It is the District Court's duty to reconcile conflicting testimony, determine its relative weight, and

---

7. Although 17 M.R.S.A. § 1031(1)(A), as it existed in 1997, did not expressly provide for the requisite state of mind, a "culpable" state of mind was nevertheless required pursuant to 17-A M.R.S.A. § 34(5) (1997). *See* 17-A M.R.S.A. § 6 (1997). "A person acts culpably when he acts with the intention, knowledge, recklessness or criminal negligence as is required." 17-A M.R.S.A. § 35 (1997).

8. Black did not assert any affirmative defenses. *See* 17 M.R.S.A. § 1031(2) (1997).

9. The District Court judge could have found the testimony of the Black family to be incredible based on her firsthand observations of the family's demeanor and effect, and was under no obligation to accept their following testimony: (1) Black was not home in the morning and early afternoon of December 9, 1997; (2) Black did not have access to his rifle on that day; (3) Black had long hair, not short hair, on December 9, 1997; and (4) Black did not own a blue coat nor did he ever wear his brother's blue coat. *See State v. Deering*, 1998 ME 23, ¶ 15, 706 A.2d 582, 586.

decide which part of the testimony was credible and worthy of belief. *Ardolino*, 1997 ME 141, ¶ 20, 697 A.2d at 80; *see also State v. Glover*, 594 A.2d 1086, 1088 (Me.1991) (noting that the weight of the evidence and determination of witness credibility are the trier of fact's exclusive province). "[A]n appellate court reviewing the sufficiency of the evidence must resolve all credibility determinations in favor of the verdict." *United States v. Andujar*, 49 F.3d 16, 21 (1st Cir.1995).

[¶ 18] Thus, we assume that the District Court declined to credit the testimony of Black's statements [10] and his family's testimony and believed the testimony presented by the State's witnesses. Viewed in this light, the evidence is sufficient to support the District Court's conclusion that Black is guilty beyond a reasonable doubt. That evidence included the following: (1) Demos saw a man wearing a brown Carhart jacket and a hat, carrying a gun and entering the Blacks' property in the late morning of December 9, 1997; (2) Trooper Mills saw Black wearing a brown Carhart jacket several days after the incident; (3) Black's admissions to Mills and Johnson regarding his whereabouts on that day placed him in the vicinity of the rabbits; (4) Black told Johnson that he did not see anyone around the neighborhood on that day, and Demos testified that she did not see anyone else that day besides the man who was wearing a brown coat and carrying a gun; (5) Demos's dog would look towards the Blacks' property when gunshots were fired; (6) Johnson saw Black standing on his property and looking down at something immediately after she heard a gunshot at about 3:30 P.M. on December 9; (7) Johnson observed human footprints that led from the rabbit hutches to the place on the Blacks' property where she had seen Joshua Black standing; (8) a soiled spot where Maggie had rested was found in the exact location where Johnson saw Black standing; (9) there was a trail of blood and urine originating from that exact spot and leading to where Maggie was found dead; (10) Scooter was found in the area where Johnson had heard three gunshots; (11) both rabbits were found dead on the Blacks' property; (12) both rabbits were killed by gunshot wounds; and (13) the shell casings found near Scooter's body matched Black's gun.

[¶ 19] In addition to the direct evidence presented, the trial court was entitled "to consider circumstantial evidence and to draw all reasonable inferences from the circumstantial evidence." *Emerson*, 675 A.2d at 979 (citations omitted). A conviction grounded on circumstantial evidence is not for that reason less conclusive. *Ardolino*, 1997 ME 141, ¶ 20, 697 A.2d at 80. Thus, the District Court "properly could have found that the circumstances, viewed in relation to each other and together with the rational inferences that could be drawn from them, satisfied the State's burden of proof that every element of the charged offense had been proven beyond a reasonable doubt." *Id.* ¶ 21, 697 A.2d at 80.

[¶ 20] There was sufficient evidence for the District Court to find beyond a reasonable doubt that it was Joshua Black who killed Maggie and Scooter. *See Deering*, 1998 ME 23, ¶ 13, 706 A.2d at 585.

The entry is:

Judgment of the Superior Court vacated. Remanded to the District Court for entry of judgment of conviction on the charge of cruelty to animals.

---

**10.** Joshua Black did not testify at the trial. References to his statements are to the interview conducted by Trooper Mills and his conversation with Johnson.