MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2024 ME 44
Docket:      Pen-23-246
Argued:      March 5, 2024
Decided:     May 30, 2024

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## JAMES A. GREEN

STANFILL, C.J.

[¶1]  James A. Green appeals from a judgment of conviction of one count of operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(C)(1) (2024), entered by the trial court (Penobscot County, *Lucy, J.*) after a jury trial. The State alleged that Green was operating under the influence of drugs, alone or in combination with alcohol, and provided a report from a Drug Recognition Expert (DRE) as part of discovery.  Green argues that the State violated the discovery rule, Rule 16 of the Maine Rules of Unified Criminal Procedure, by not providing an additional expert witness report from the DRE and that the State should have qualified the DRE as an expert witness before offering the opinion testimony he gave.  For the reasons set out below, we disagree and affirm the conviction.

## I.    BACKGROUND

[¶2]  Viewing the evidence admitted at trial in the light most favorable to the State, the jury rationally could have found the following facts.  *See State v. Black*, 2000 ME 211, ¶ 14, 763 A.2d 109.

[¶3]  On October 21, 2022, while on patrol, a Bangor police officer saw a vehicle parked in the middle of a street at a green traffic light.  When the officer approached, she found the driver slumped over toward the passenger side.  After waking the driver, later identified as Green, she noticed that "his speech was slurred, his pupils were constricted, and he was . . . moving slow."  The officer conducted field sobriety tests and then arrested Green and brought him to the Bangor Police Department.  The arresting officer called another officer, who was trained as a DRE, to evaluate Green.  During the ride to the station and during the evaluation, Green was nodding off.  He had white powder in his nose and had driven his car while impaired by drugs to the place where the officer found him.

[¶4]  Green was charged by criminal complaint dated December 19, 2022, with one count of OUI under 29-A M.R.S. § 2411(1-A)(C)(1); the complaint

alleged that he failed to submit to a blood test.[1]  He pleaded not guilty on December 21, 2022, and proceeded to a jury trial on June 21, 2023.

[¶5]  Just before the trial began, Green filed a motion in limine to restrict the testimony of the DRE who evaluated Green.  Green requested that the State be prohibited from using the term "expert" to describe the DRE to the jury.  He also asked that the DRE's testimony be based on his observations and limited to "matters that a layperson may testify to," and that the DRE be prohibited from drawing any conclusions.  Green argued that the DRE could not be qualified as an expert under Maine Rule of Evidence 702.  Green further argued that if the DRE were to be presented as an expert, the State would have violated the discovery rules by (1) failing to provide a report on which the DRE's testimony would be based and (2) failing to respond to Green's supplemental discovery request.  *See* M.R.U. Crim. P. 16.  In elaborating, Green argued that he did not receive a curriculum vitae or a copy of certifications for the DRE in response to his additional discovery request for the "[n]ames of all expert witnesses who might be called at trial along with reports of each expert pursuant to Rule 16(d)(4)."

---

[1]  At trial, the parties stipulated that Green failed to submit to a test at the request of a law enforcement officer.  *See* 29-A M.R.S. § 2411(1-A)(C).

4

[¶6]  In response, the State asserted that it provided the DRE's report, which was titled "Drug Influence Evaluation," to Green with the rest of the automatic discovery.  Green conceded he received that report; he instead argued it did not satisfy the requirements of the automatic discovery rule, M.R.U. Crim. P. 16(a)(2)(G), or the requirements for the preparation of an expert report under M.R.U. Crim. P. 16(d)(4), which he said he cited in his discovery request.  Green did not, however, provide a copy of his discovery request to the trial court.

[¶7]  The court stated that it would "reserve ruling on any particular opinions" and noted that it would address those issues later at sidebar, if necessary.  The court also noted that Rule 16(d)(4), cited by Green, provides that the court may order the preparation of reports by expert witnesses, but Green never requested a court order.  The court further stated that "[i]f issues come up during the testimony, [Green] certainly can make objection and if there needs to be voir dire, we will . . . address that as we get to it."

[¶8]  During the trial, the prosecutor used the term "DRE" in front of the jury, although no one ever explained what the acronym stood for.  Green did not object to the DRE's qualifications or opinions or to the DRE's testimony at all.  The State extensively questioned the DRE about his background,

credentials, and experience. The DRE had evaluated Green in the Intoxilyzer room at the Bangor Police Department. During the DRE's testimony, the State used the video recording of the DRE's evaluation to ask about his evaluation, the different tests he conducted, and what those tests led him to conclude. The DRE ultimately gave his opinion "as a DRE." Green's attorney then cross-examined the DRE and asked about his credentials and expertise. Although he asked questions that attempted to discredit the DRE's status as an expert, he did not object or raise the issue with the court during the DRE's testimony.

[¶9] In addition to the DRE's testimony, the court admitted in evidence photographs of Green's nose with a white powder in it. Green testified on direct examination that he had felt sleepy and put the car in park at the intersection. On cross-examination, he testified that he had accidentally taken a double dose of his blood pressure medication. He testified that because of the incorrect dose, he had been "getting dozy" and "getting sleepy and stuff and that's why [he] shut the car off." Green testified that he had trouble keeping his eyes open and parked his car at the light where the officer found him because he did not feel safe to drive.

6

[¶10] The court instructed the jury on the evaluation of expert witnesses. The jury returned a verdict of guilty, and the court imposed the mandatory minimum sentence of 96 hours of jail time, a $600 fine, and a 150-day license suspension. *See* 29-A M.R.S. § 2411(5)(A). Green timely appeals.

## II. DISCUSSION

## A. Discovery Violation

[¶11] Maine Rule of Unified Criminal Procedure 16 requires the State to produce, through automatic discovery, "[a]ny reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons." M.R.U. Crim. P. 16(a)(2)(G). That report is required to be provided "within 7 days after the arraignment or entry of a written plea of 'not guilty.'" M.R.U. Crim. P. 16(b)(2). The defendant may make a written request of the State for materials beyond those required to be produced as part of automatic discovery. M.R.U. Crim. P. 16(c)(1). If the State objects to that request, the defendant can file a motion asking the court to order the State to provide the additional discovery. M.R.U. Crim. P. 16(d)(2). If any expert the State intends to call "has not prepared a report of examination or tests," the defendant can move to compel the preparation of a report. M.R.U. Crim. P. 16(d)(4).

[¶12]  Imposing disclosure obligations on the State serves to "enhanc[e] the quality of the pretrial preparation of both the prosecution and defense and diminish[] the element of unfair surprise at trial, *all to the end of making the result of criminal trials depend on the merits of the case* rather than on the demerits of lawyer performance on one side or the other." *State v. Poulin*, 2016 ME 110, ¶ 29, 144 A.3d 574 (quotation marks omitted).  The primary concern of Rule 16, in the absence of bad faith on the part of the State, is to "protect the defendant from any unfair prejudice."  *State v. Mylon,* 462 A.2d 1184, 1186 (Me. 1983).

[¶13]  It is undisputed that the State provided Green with the DRE's report as part of automatic discovery, putting Green on notice that there was an expert involved in the case.  That report outlined the results of the DRE's examination and his opinions.  Green argues that the State should have provided a curriculum vitae for the DRE and the scientific studies that his training and report were based on, but Green conceded that he did not specifically ask for those things as part of his discovery request.  Moreover, although Green could have filed a motion to compel further discovery, he did not do so. In sum, the State provided in automatic discovery what was required under M.R.U. Crim. P. 16.  Because Green did not specifically request

8

supplemental discovery or move to compel discovery, there was no discovery violation.[2]  *See* M.R.U. Crim. P. 16(a), (c), (d).

**B.      The DRE's Expert Testimony**

[¶14]  Section 2526 of Title 29-A establishes the DRE program in Maine and provides that "[o]nly those law enforcement officers who successfully complete the training and certification program established under this section may conduct drug impairment assessments and offer testimony as drug recognition experts under section 2525."  29-A M.R.S. § 2526(3) (2024); *see State v. Atkins*, 2015 ME 162, ¶ 15, 129 A.3d 952.  Section 2526 thus expressly contemplates that when drug recognition experts testify, they are testifying as experts.  Moreover, according to 29-A M.R.S. § 2525(2) (2024),

> [i]f a law enforcement officer certified as a drug recognition expert by the Maine Criminal Justice Academy conducts a drug impairment assessment, the officer's testimony about that assessment is admissible in court as evidence of operating under the influence of intoxicants.

Although section 2525(2) makes the testimony of the DRE admissible at trial, the testimony is still subject to objections and the gatekeeping function of the

---

[2] Green additionally argues that the State's failure to provide the materials he requested violates the confrontation clause or due process.  Because Green was able to extensively cross examine the DRE, there was no confrontation clause violation.  He also has not demonstrated any prejudice or a violation of his right to a fair trial.  *See State v. Page*, 2023 ME 73, ¶¶ 13 & n.5, 14, 306 A.3d 142; *State v. Gould*, 2012 ME 60, ¶ 27, 43 A.3d 952.

trial court as established in the evidence rules. *See Atkins*, 2015 ME 162, ¶ 2, 129 A.3d 952; M.R. Evid. 401-403, 601(b), 702. Attorneys are always free to object to questions that stray beyond the competence of a witness or are otherwise impermissible under the Maine Rules of Evidence.[3]

[¶15] "[W]hether opinion testimony is admissible as lay opinion evidence or can only be admitted as expert opinion evidence is primarily a function of two variables—the extent to which the witness's foundation for giving the opinion consists of the witness's own perceptions, observations, and experiences as opposed to the knowledge and experiences of others; and whether the subject of the opinion is so specialized as to place it beyond the ability of unskilled persons [to be] capable of forming correct conclusions respecting it." *State v. Abdullahi*, 2023 ME 41, ¶ 25, 298 A.3d 815 (quotation marks omitted) (concluding that police officers provided lay opinions when they testified to the identity of a drug based on their familiarity with drugs, something an ordinary person with familiarity with drugs would also be able to do). "An opinion is not admissible as lay witness testimony if it involves 'knowledge, skill, experience, training, or education' that is beyond the

---

[3] Given that Green failed to object to the DRE's qualifications as an expert witness or any of his opinion testimony, we do not reach the question of what limits there may be to a DRE's competence under the Rules of Evidence to provide expert opinions.

comprehension of an ordinary person." *Id.* ¶ 22 (quoting M.R. Evid. 702); *see also State v. Woodburn*, 559 A.2d 343, 346 (Me. 1989) ("[B]efore admitting expert testimony the trial court must consider (1) whether the matter is beyond common knowledge so that the untrained layman will not be able to determine it intelligently and (2) whether the witness is qualified to give the opinion sought.").

[¶16]  We have stated that in an OUI prosecution based on drugs, a police officer who was not trained as a DRE was nonetheless able to testify to his observations of the defendant's physical condition and the results of field sobriety tests, "none of which requires any level of expertise." *Atkins*, 2015 ME 162, ¶¶ 18, 22, 129 A.2d 952; *see State v. Libby,* 133 A.2d 877, 881, 153 Me. 1, 7 (1957) ("[W]e need not be doctors or psychiatrists to form a rational opinion as to whether another is exhibiting the adverse influence of intoxicating liquor or is in fact drunk. . . . A presiding justice commits no error in permitting a police officer who observed the respondent at the scene of the accident to state his opinion that the respondent was then under the influence of intoxicating liquor.").

[¶17]  Much of the DRE's testimony in this case would similarly be admissible without qualification as an expert.  The State nonetheless asked the

DRE questions about his training, the certification program, and his special expertise that allowed him to become a DRE.[4]  The DRE's testimony went beyond lay opinion testimony and was informed by his training and certification as a drug recognition expert, particularly when he testified to the class of drug likely impairing Green based on his interpretation of Green's vital signs and Green's performance on a series of specialized assessments he gave. This testimony is "beyond the comprehension of an ordinary person." *Abdullahi*, 2023 ME 41, ¶ 31, 298 A.3d 815; *see also People v. Stewart*, 55 P.3d 107, 123 (Colo. 2002) ("Officer testimony becomes objectionable when what is essentially expert testimony is improperly admitted under the guise of lay opinions.").  The DRE thus testified as an expert in everything but name.

[¶18]  "A pretrial objection to . . . evidence must be timely renewed at trial unless the court states on the record, or the context clearly demonstrates, that a ruling on the objection . . . is final." M.R. Evid. 103(e).  "Maine Rule 103(e) puts the burden on counsel to renew an objection or offer made in limine or otherwise before the evidence would be offered at trial, unless the trial judge or the circumstances make it clear that the previous ruling was indeed final." M.R. Evid. 103 restyling note, Nov. 2014; *see also State v. Thomes*, 1997 ME 146,

---

[4]  The State shied away from calling the DRE an expert witness despite laying this foundation; rather, it offered the DRE's expert testimony under the guise of a lay opinion.

¶ 7, 697 A.2d 1262 ("A court cannot evaluate the probative value of contested evidence in a vacuum."). The trial court expressly deferred ruling on the pretrial motion in limine, and during the trial Green did not object to the DRE's expertise, competence, or testimony, nor did he renew his motion in limine. His objection was thus unpreserved. *See Thomes*, 1997 ME 146, ¶ 7, 697 A.2d 1262.

[¶19] When an issue is unpreserved for appellate review, we review it for obvious error. *Id.* "For obvious error to require the reversal of a judgment, the error must deprive the party of a fair trial or result in such serious injustice that, in good conscience, the judgment cannot be allowed to stand." *Abdullahi*, 2023 ME 41, ¶ 35, 298 A.3d 815 (quotation marks omitted).

[¶20] The DRE's opinion testimony was expert opinion testimony. And, despite the State's insistence that he was not an expert witness, the DRE's report containing his examinations and conclusions had been supplied to the defendant, his training and expertise were explained to the jury, and the jury was instructed regarding expert witnesses. We discern no error, let alone obvious error, that deprived Green of a fair trial or resulted in a serious injustice.[5] *See id.* ¶¶ 26, 31, 35.

---

[5] Even without the DRE's testimony, the trial record contained significant evidence that Green had operated a vehicle while impaired by drugs. The photograph taken by the officer showed a white powder in Green's nose. Green testified that he had accidentally taken too much of his blood pressure medication and it had been making him "dozy" and "sleepy and stuff and that's why I shut the car off."

The entry is:

Judgment affirmed.

---

Zachary J. Smith, Esq. (orally), Lawsmith Legal Services, L.L.C., Bangor, for appellant James A. Green

R. Christopher Almy, District Attorney, Lori Ann Renzullo Quam, Asst. Dist. Atty., and Mark A. Rucci, Dep. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2022-3933
FOR CLERK REFERENCE ONLY

---

He testified that he put the car in park in the road because he "didn't dare" to pull over because he did not feel safe to drive.